Deborah Ann LYNCH, Appellee,

v.

CITY OF DES MOINES,
Iowa, Appellant.

No. 89–222.

Supreme Court of Iowa.

April 18, 1990.

Rehearing Denied May 17, 1990.

Nelda Barrow Mickle, City Sol., Des Moines, for appellant.

Roxanne Barton Conlin of Galligan & Conlin, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, LAVORATO and NEUMAN, JJ.

McGIVERIN, Chief Justice.

Plaintiff Deborah Ann Lynch was a police officer employed by defendant City of

Des Moines, Iowa. In May 1985, Lynch filed a complaint with the Iowa Civil Rights Commission in which she alleged that the City had discriminated against her on the basis of sex, in violation of Iowa Code chapter 601A (1985) (Iowa Civil Rights Act of 1965, as amended). The complaint became the basis of this lawsuit, which was tried to the district court.

In December 1988, the district court entered its findings of fact, conclusions of law, and judgment. The court ruled that the City had violated chapter 601A by maintaining a sexually hostile work environment at the Des Moines Police Department and by retaliating against Lynch for her complaints about the work environment. The court awarded Lynch $10,000 to compensate her for emotional distress she suffered because of the City's conduct. The court also ordered the City to develop and implement an education and training plan to prevent, detect and correct sexual harassment at the police department.

The City appealed and Lynch cross-appealed. On appeal, the City argues that the district court: 1) lacked authority to consider certain incidents of alleged sexual harassment and retaliation aimed at Lynch; 2) erred by finding that the City had violated chapter 601A; 3) erred by ruling that Iowa Code section 601A.6(1)(a) is not unconstitutionally vague; 4) erred by awarding Lynch damages for emotional distress and by ordering the City to develop and implement an education and training plan, and; 5) erred by refusing to allow the City to amend its answer shortly before trial. On cross-appeal, Lynch asserts that the district court's $10,000 award to her is so grossly inadequate that it should be increased.

■ This case was tried to the court as a law action. Our review, therefore, is for correction of errors at law. *See, e.g., Frank v. American Freight Systems, Inc.,* 398 N.W.2d 797, 799 (Iowa 1987) (supreme court will treat case on appeal in the manner in which it was tried in district court); Iowa R.App.P. 4. The district court's findings of fact are entitled to the weight of a special verdict and are binding on appeal if supported by substantial evidence. *Blunt, Ellis & Loewi, Inc. v. Igram,* 319 N.W.2d 189, 192 (Iowa 1982).

We conclude that substantial evidence supports the district court's findings of fact and that no error of law occurred. Accordingly, we affirm.

I. *Background facts and proceedings.* Lynch became a Des Moines police officer in January 1981. She served in that capacity until a work-related knee injury forced her to retire from the force in March 1988. Her knee injury and retirement are unrelated to the claims in this suit; but for the knee injury, Lynch would still be a Des Moines police officer.

Prior to March 1985, Lynch and fellow officers Timothy Lynch (T. Lynch, not related to plaintiff Lynch) and Merlin D. Nielsen were assigned to the same squad and worked together on the first watch (10:30 p.m. to 6:30 a.m.).

On March 29, 1985, Lynch filed a formal complaint with the internal affairs unit of the police department, alleging that T. Lynch and Nielsen had been sexually harassing her at work. An internal affairs investigation was begun. This investigation culminated on May 13, 1985, when chief of police William H. Moulder concluded that the conduct of T. Lynch and Nielsen had violated both the City of Des Moines and Des Moines Police Department prohibitions of sexual harassment. Moulder suspended T. Lynch and Nielsen for thirty days and reassigned them to the third watch. Both officers were warned that further sexual harassment by them would result in their termination. Sergeant Dale Anderson was also suspended because of his ineffective supervision of T. Lynch and Nielsen after Lynch's complaints concerning them.

On May 21, 1985, Lynch filed an administrative complaint with the Iowa Civil Rights Commission in which she alleged that the City had discriminated against her on the basis of sex, in violation of Iowa Code chapter 601A. The complaint specifically alleged that from September 1984 to March 29, 1985, officers T. Lynch and Nielsen made sexual comments toward Lynch,

that the comments had been reported to Lynch's superiors and to the internal affairs unit, and that the situation was not effectively remedied; and that as a result of her reports Lynch was reassigned to another patrol territory while her harassers were given privileged treatment. In other words, the complaint alleged that the City had practiced two kinds of sex discrimination: maintenance of a sexually hostile work environment at the police department, and retaliation against Lynch for her complaints about the work environment. *See* Iowa Code §§ 601A.6(1)(a) (prohibiting sex discrimination in employment), 601A.11(2) (prohibiting retaliation for opposing or reporting sex discrimination in employment).

In September 1985, Lynch filed a petition at law against the City, Anderson, T. Lynch and Nielsen, alleging their liability to her on several common law tort theories. By November, the Iowa Civil Rights Commission had issued Lynch a right to sue letter with regard to her May 21 administrative complaint, and Lynch amended her petition at law to include chapter 601A claims against the defendants. *See* Iowa Code § 601A.16; 161 Iowa Admin.Code 3.9. The matter was resolved prior to trial except for the chapter 601A claims against the City. Trial was to the court solely on those claims.

The district court made extensive findings of fact concerning the sexual comments and sexually-charged verbal abuse which had been aimed at Lynch by T. Lynch and Nielsen. We choose not to dignify their conduct by recording it here. Suffice it to say that it involved repeated incidents of sexually derogatory remarks, vulgar insults, and requests for sexual favors which the City attempts to portray as "teasing" or "joking" but which were demeaning and insulting to Lynch, whatever their purpose. In at least one instance Nielsen actively interfered with Lynch's performance of her duties. In other instances Lynch was so visibly upset by the situation that her work performance was undoubtedly affected.

In addition, the court cited one incident where, after having been insulted by sexu-al comments from T. Lynch and Nielsen, Lynch complained to sergeant Anderson. Anderson responded by making a sexual comment to Lynch about her body. The evidence conflicted over whether Anderson even spoke to T. Lynch and Nielsen about their conduct. Lynch also complained to captain Charles Backstrom. Neither Backstrom nor Anderson compelled T. Lynch and Nielsen to stop making sexual comments toward Lynch.

On another occasion when Lynch complained to Anderson about Nielsen, Anderson actually suggested to Lynch that she take matters into her own hands by reporting Nielsen's conduct to Nielsen's wife. Lynch appropriately told Anderson that this advice was "ridiculous" and stated that she would file a formal complaint unless the harassment was stopped.

The district court found that supervisory officers were sometimes present during incidents like those described and were familiar with the conduct of T. Lynch and Nielsen toward Lynch, yet took no action to prevent it. Lynch repeatedly asked her harassers to stop, and brought the matter to the attention of her superiors on several occasions.

In addition to the sexually hostile work environment claim, the district court considered Lynch's claim that she was the victim of retaliation for complaining about the work environment. The court found that the City had adequately explained the alleged incidents of retaliation by nondiscriminatory reasons, except for the conduct of one officer, lieutenant Jack Rose.

Rose supervised Lynch for a time in 1985 and 1986. The court found that after T. Lynch and Nielsen had been disciplined by chief Moulder, Rose treated Lynch differently than he had before. He criticized Lynch's fingernail length for the first time, noting it on his inspection report. He ordered Lynch to pick up paper soiled with human defecation under the pretext of gathering evidence. He told other officers at roll call that Lynch had the City in a precarious legal position and asked them to collect negative information on her. He

followed Lynch home one time after work for no valid reason.

In light of these facts, the court concluded that the City had violated Iowa Code chapter 601A by maintaining a sexually hostile work environment at the Des Moines Police Department and by retaliating against Lynch for her complaints about the work environment. The court entered judgment for Lynch.

II. *Jurisdictional issues.* The City asserts that the district court lacked authority to consider certain incidents of alleged sexual harassment and retaliation aimed at Lynch.[1]

■ A. *Incidents of sexual harassment which occurred prior to September 1984 and/or outside the 180-day limitations period of Iowa Code section 601A.15(12).* The City argues that the court lacked authority to consider any incident which occurred prior to 180 days before Lynch filed her administrative complaint with the Iowa Civil Rights Commission on May 21, 1985, that is, any incident which occurred prior to approximately November 21, 1984. Similarly, the City argues that because Lynch's administrative complaint alleged that she had been harassed "from September 1984 to March 29, 1985," the court lacked authority to consider any incident of sexual harassment which occurred prior to September 1984.

It is true that the Iowa Civil Rights Commission may consider only claims brought within 180 days after the alleged discriminatory practice occurred. Iowa Code § 601A.15(12) ("A claim under this chapter shall not be maintained unless a complaint is filed with the commission within one hundred eighty days after the alleged discriminatory or unfair practice occurred.") It also is true that the district court has authority to consider only those chapter 601A claims that first have been presented to the commission.[2] If the commission has no authority to consider a chapter 601A claim for whatever reason, then the district court likewise lacks authority to consider that claim. *See City of Des Moines Police Dep't v. Iowa Civil Rights Comm'n*, 343 N.W.2d 836 (Iowa 1984) (reversing district court judgment which upheld agency order on judicial review, where agency lacked authority to act on the matter).

The district court unquestionably considered specific incidents of sexual harassment aimed at Lynch which occurred prior to September 1984 and prior to November 21, 1984.

We cannot agree with the City's reasoning that if a specific incident of sexual harassment was not specifically "pleaded" by Lynch in her complaint to the commission (because it occurred prior to September 1984), then the court lacked authority to consider it as evidence in Lynch's case. The "discriminatory or unfair practice" Lynch alleged in her complaint was the City's maintenance of a sexually hostile work environment through sexual harassment. Specific incidents of sexual harassment are evidence of the validity of the claim, but they are not claims in themselves in the sense that each incident must have been pointed out to the commission before it may be considered by the court.

---

1. This case illustrates the distinction we have recently drawn between "lack of subject matter jurisdiction" and "lack of authority to hear a particular case." *See Christie v. Rolscreen Co.*, 448 N.W.2d 447, 450 (Iowa 1989). The district court has subject matter jurisdiction over cases arising under the Iowa Civil Rights Act, but can exercise that jurisdiction only if it is properly invoked in this particular case. If the jurisdiction was not properly invoked, then the court has no authority to hear this case. The City argues that the jurisdiction of the district court was not properly invoked in this case because Lynch failed to lay the appropriate groundwork at the agency level.

2. A complainant before the commission may come into court by a petition for judicial review of agency action. Iowa Code § 601A.17. Otherwise, a complainant may come into court after being granted a right to sue letter from the commission. Iowa Code § 601A.16; 161 Iowa Admin.Code § 3.9. In either case, the chapter 601A claim ordinarily must be presented to the commission before it can be presented to a court. The procedures mandated by chapter 601A are the exclusive means of asserting claims under that chapter. *Northrup v. Farmland Indus., Inc.*, 372 N.W.2d 193, 197 (Iowa 1985).

We also cannot agree with the City's reasoning that if a specific incident of sexual harassment occurred prior to November 21, 1984, then the court lacked authority to consider it as evidence in Lynch's case. When the plaintiff's claim is that her employer maintained a sexually hostile work environment, the alleged discriminatory practice must be viewed as a so-called "continuing violation" of chapter 601A. As long as the discriminatory practice continued within the limitations period, the claim is timely and may be proven, at least in part, by evidence of specific incidents of sexual harassment which occurred outside the limitations period. *See Hy–Vee Food Stores, Inc. v. Iowa Civil Rights Comm'n,* 453 N.W.2d 512, 527 (Iowa 1990); 161 Iowa Admin.Code 3.3.

This rule has much to recommend it in cases where the alleged sex discrimination takes the form of maintenance of a sexually hostile work environment. Unlike a charge of discriminatory discharge or failure to hire, for example, the essence of a sexually hostile work environment claim clearly is that of a pattern of harassment, a violation over time; we doubt that a sexually hostile work environment could be shown by proving only one incident of sexual harassment.[3] Were we to hold that the court cannot consider incidents of sexual harassment which occurred outside the limitations period in sexually hostile work environment cases, a plaintiff would be forced to endure the hostile environment until sufficient incidents had occurred to show that the environment existed, but then might be precluded from proving a case because some incidents occurred outside the limitations period.

We conclude that the district court properly considered specific incidents of sexual harassment which occurred prior to September 1984, notwithstanding the language of Lynch's administrative complaint. We also conclude that the court properly considered specific incidents of sexual harassment which occurred prior to 180 days before Lynch filed her administrative complaint.

**■ B.** *Incidents of retaliation which occurred after Lynch's administrative complaint was filed.* The City's second argument concerns the court's authority to consider the conduct of lieutenant Rose. With regard to her claim of illegal retaliation, Lynch's administrative complaint specified that her cause of action was based on her perception that after complaining to her superiors, she had been reassigned to another patrol area while her harassers were given privileged treatment. The City argues that the court lacked authority to consider Rose's conduct because it was not mentioned in Lynch's administrative complaint.

Lynch's administrative complaint was filed on May 21, 1985. The district court found that Rose's retaliatory conduct began after T. Lynch and Nielsen were disciplined by chief Moulder on May 13, 1985, and some of it occurred as late as September 1986. The fact that Rose's conduct did not occur until after Lynch's complaint was filed with the commission is significant.

In *Hulme v. Barrett,* 449 N.W.2d 629 (Iowa 1989), the plaintiff's work hours were reduced and she thereafter complained to the Iowa Civil Rights Commission that she was the victim of illegal age discrimination. *Id.* at 630–31. Plaintiff was later discharged from employment. *Id.* at 631. After the commission issued her a right to sue letter, plaintiff sued her former employer under chapter 601A alleging: 1) that her hours were illegally reduced because of her age; 2) that she was illegally discharged because of her age; and 3) that she was illegally discharged in retaliation for filing a complaint with the commission. *Id.*

The district court in *Hulme* ruled that it had no jurisdiction over plaintiff's second and third claims because plaintiff's discharge had not been raised before the com-

---

**3.** This type of sex discrimination claim requires proof that the sexual harassment was so pervasive and severe that it altered the conditions of employment and created an abusive work environment. A single incident of harassment, in most cases, would not be "pervasive" sexual harassment.

mission. *Id.* We reversed on this issue, saying that "[t]o force a plaintiff to file a new administrative charge with each continuing incident of discrimination would create needless procedural barriers." *Id.* at 633 (quoting *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973)). We held that the district court had jurisdiction over plaintiff's second and third claims because those claims were reasonably related to plaintiff's first claim, a claim which was properly before the court. *Id.*

Lynch's claim of a sexually hostile work environment and her claim of retaliation concerning her patrol area reassignment were pending before the commission when Rose's retaliatory conduct was just beginning. Rose's conduct is reasonably related to Lynch's other claims, claims which were properly before the court. To require an additional administrative proceeding on Rose's conduct would be to erect a needless procedural barrier to hearing the merits of Lynch's case. Following *Hulme*, we conclude that the district court had authority to consider the retaliation claim arising out of Rose's conduct toward Lynch.

■ III. *Statutory and sufficiency of the evidence issues.* The Iowa Civil Rights Act prohibits sex discrimination in employment in broad terms, making it illegal to:

refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, *or to otherwise discriminate in employment* against any applicant for employment or employee because of the ... sex ... of such applicant or employee, unless based upon the nature of the occupation.

Iowa Code § 601A.6(1)(a) (emphasis added).[4] In *Chauffeurs, Teamsters and Helpers, Local Union No. 238 v. Iowa Civil Rights Commission*, 394 N.W.2d 375 (Iowa 1986), we held that similar language in

Iowa Code section 601A.6(1)(b) made it illegal for a union to maintain a racially hostile membership environment by failing to stop racial harassment of the plaintiff by the union's members. *Id.* at 378–81. We now follow through on *Chauffeurs* and hold that maintenance of a sexually hostile work environment through sexual harassment is a form of illegal sex discrimination under section 601A.6(1)(a) of the Iowa Civil Rights Act.

■ In *Chauffeurs* we adopted the approach of *Henson v. City of Dundee*, 682 F.2d 897 (11th Cir.1982), as to the elements of a racial harassment claim under the Iowa Civil Rights Act. *Chauffeurs*, 394 N.W.2d at 378.[5] *Henson* was a sexual harassment case. *Henson*, 682 F.2d at 899. We think, therefore, that the *Henson* analysis should also be applied to sexual harassment claims under the Iowa Civil Rights Act. In order to establish a valid claim of maintenance of a sexually hostile work environment through sexual harassment, it must be proven that:

(1) the plaintiff belongs to a protected class;

(2) the plaintiff was subject to unwelcome sexual harassment;

(3) the harassment was based upon sex;

(4) the harassment affected a term, condition or privilege of employment, and;

(5) the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action.

*Cf. Chauffeurs*, 394 N.W.2d at 378. *See also Barrett v. Omaha Nat'l Bank*, 726 F.2d 424, 427 (8th Cir.1984) (immediate and appropriate remedial action may insulate defendant employer from Title VII liability for sexual harassment of plaintiff by her

---

**4.** Sex discrimination is just one of many kinds of discrimination made illegal by the Iowa Civil Rights Act. The broad terms of chapter 601A prohibit discrimination because of age, race, creed, color, sex, national origin, religion or disability. *See, e.g.,* Iowa Code § 601A.6 (prohibiting discrimination in employment).

**5.** We have previously stated that decisions under Title VII of the federal Civil Rights Act of 1964 may be persuasive in construing the Iowa Civil Rights Act, although, of course, federal decisions under the federal statute are not binding on us when construing the Iowa statute. *See, e.g., Sommers v. Iowa Civil Rights Comm'n*, 337 N.W.2d 470, 474 (Iowa 1983).

coworkers). The district court correctly identified this analysis as the law applicable to Lynch's claim that the City maintained a sexually hostile work environment.[6]

The City does not seriously dispute that the Iowa Civil Rights Act makes it illegal to maintain a sexually hostile work environment through sexual harassment. The City also does not dispute that *Chauffeurs* provides, in general outline, the essential elements of such a claim. Rather, the City's argument on the statutory front is that Lynch failed to prove the elements of the claim. This is a challenge to the sufficiency of the evidence.

■ The City first argues that Lynch was not subjected to *unwelcome* sexual harassment because there was evidence that Lynch herself voluntarily engaged in "raw sexual banter" with her fellow officers, often using the same crass language she now claims to have found offensive. The argument is based on language in *Henson* where the court clarified the concept of "unwelcomeness" by stating that the alleged sexually-harassing conduct "must be unwelcome in the sense that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive." *Henson*, 682 F.2d at 903.

We agree that Lynch's conduct is relevant to the determination of whether the alleged sexual harassment by T. Lynch and Nielsen was unwelcome. The record shows that Lynch sometimes gave as much as she got. Nevertheless, it also shows that she repeatedly indicated to T. Lynch, Nielsen, and her superiors that this state of affairs was offensive and unacceptable. She acted reasonably under the circumstances. Viewing the record as a whole, we believe there is substantial evidence to support the

district court's conclusion that the harassment aimed at Lynch was unwelcome.

■ The City next argues that the harassment of Lynch was not based upon sex, because T. Lynch and Nielsen "used obscene language all the time to everyone." It may be true that verbal abuse with sexually-charged language was not reserved only for women at the Des Moines Police Department. Nevertheless, the court found that Lynch would not have been subjected to such pervasive harassment but for the fact that she is a woman. Many of the insulting comments aimed at Lynch were particularly reserved for women. There is substantial evidence to justify the court's conclusion that Lynch was harassed because of her sex.

■ The City also asserts that the harassment aimed at Lynch did not affect a term, condition or privilege of employment. This argument is based on the fact that the harassment of Lynch did not take the form of denial of a tangible job benefit.

We reject the suggestion that only cases involving the loss of a tangible job benefit are actionable under the Iowa Civil Rights Act. A primary purpose of the legislature in passing the Iowa Civil Rights Act was to place women on equal footing with men in the workplace. *Sommers v. Iowa Civil Rights Comm'n*, 337 N.W.2d 470, 474 (Iowa 1983). The Act must be construed broadly to that end. Iowa Code § 601A.18. Where sexual harassment in the workplace is so pervasive and severe that it creates a hostile or abusive work environment, so that the plaintiff must endure an unreasonably offensive environment or quit working, the sexual harassment affects a condition of employment. In such cases, female employees are faced with a working envi-

---

**6.** In *Chauffeurs,* we suggested that the burden-shifting analysis traditionally used in disparate-treatment discrimination cases also applies in hostile work environment cases. *Chauffeurs,* 394 N.W.2d at 378. *See generally Hy–Vee v. Iowa Civil Rights Comm'n,* 453 N.W.2d 512 (Iowa 1990) (discussing burden-shifting analysis). It is questionable whether the traditional burden-shifting analysis is appropriate or necessary in hostile work environment cases where

the alleged discrimination does not involve deprivation of a tangible job benefit. *See, e.g., Henson,* 682 F.2d at 905 n. 11; *Katz v. Dole,* 709 F.2d 251, 255–56 (4th Cir.1983). This question was not raised by the parties, so we leave it for another day. We note that the applicability of the traditional burden-shifting analysis to Lynch's claim of illegal retaliation is not questioned.

ronment different from that faced by men, a situation that the Iowa Civil Rights Act sought to remedy.

The record in this case provides substantial evidence to support the district court's conclusion that Lynch's work environment was so polluted by sexual harassment that it affected her psychological and emotional well-being. She was forced to endure pervasive and severe sexual harassment or quit. The court correctly determined that the harassment affected a condition of Lynch's employment.

The City's final argument on the sexually hostile work environment claim is that there is not substantial evidence to support the court's conclusion that after the City knew or should have known of the harassment, it failed to take prompt and appropriate remedial action. The City submits that chief Moulder's suspension of T. Lynch, Nielsen, and Anderson in May 1985 conclusively establishes that the City took prompt and appropriate remedial action and so is insulated from liability here.

This argument overlooks the fact that the court found that Lynch's superiors knew about the harassment months before Lynch resorted to the formal internal affairs complaint process, yet did nothing to curb the harassment. Substantial evidence supports that finding.

Finally, the City asserts that Lynch failed to prove her claim of illegal retaliation under Iowa Code section 601A.11(2). That section makes it illegal to "discriminate" against a person "because such person has lawfully opposed any practice forbidden by [chapter 601A], obeys the provisions of [chapter 601A], or has filed a complaint, testified, or assisted in any proceeding under [chapter 601A]." The record supports the district court's findings of fact with regard to lieutenant Rose's conduct, and we agree that Rose's conduct is within the prohibition of section 601A.11(2).

In sum, we conclude that there is substantial evidence to support the district court's findings that the City violated Iowa Code sections 601A.6(1)(a) and 601A.11(2) in its treatment of Lynch. We find no error here.

IV. *Remedy issues.* The City assails the court's choice of remedy on two grounds. First, the City argues that the district court erred in awarding Lynch damages for emotional distress where the City's conduct was not "outrageous" and Lynch's emotional distress was not demonstrably severe. Second, the City argues that the district court has no authority to order the City to develop and implement a police department-wide plan of education and training in the prevention, detection and correction of sexual harassment. On cross-appeal, Lynch contends the damages awarded to her were inadequate.

■ A. *Damages for emotional distress.* The questions raised by the argument concerning damages for emotional distress have been answered since this appeal was docketed. In *Hy–Vee v. Iowa Civil Rights Comm'n,* 453 N.W.2d 512, 525 (Iowa 1990), we held that emotional distress is a recoverable element of damages in a private action for violation of the Iowa Civil Rights Act. A chapter 601A complainant may recover damages for emotional distress even without a showing of physical injury, severe distress, or outrageous conduct. *Id.*

■ B. *Affirmative action under Iowa Code chapter 601A.* We also find no merit in the argument that the court lacked authority to order the City to develop and implement a plan to curb sexual harassment in the police department. The district court in a chapter 601A lawsuit may grant any relief which would be available to the commission in an administrative proceeding under chapter 601A. Iowa Code § 601A.16(5). To remedy discriminatory practices, the commission is empowered to:

> issue an order requiring [the violator] to cease and desist from the discriminatory or unfair practice and *to take the necessary remedial action as in the judgment of the commission will carry out the purposes of this chapter.*

Iowa Code § 601A.15(8) (emphasis added). "Development and implementation of an educational program" is not a specifically enumerated form of remedial action under

section 601A.15(8). Under the statute, however, allowable "remedial action" expressly is *not* limited to those remedies specifically enumerated in the statute. Iowa Code § 601A.15(8)(a).

The legislature has also provided that the Iowa Civil Rights Act must be broadly construed to effectuate its purposes. Iowa Code § 601A.18. Allowing the sort of remedy ordered by the district court in this case would further the purposes of the Iowa Civil Rights Act, and this remedy is not more intrusive than those remedies specifically enumerated in section 601A.15(8). We hold, therefore, that one remedy available under the Iowa Civil Rights Act is an order requiring a violator to educate and train its employees not to engage in conduct prohibited by the Act.

We rejected a very similar argument on this point in *Iron Workers Local No. 67 v. Hart*, 191 N.W.2d 758 (Iowa 1971). In that case, Local 67 was ordered to submit to the Iowa Civil Rights Commission "an affirmative action program to recruit, solicit and admit minorities to its membership." *Id.* at 764. We wrote:

> In attacking the affirmative portions of this order, respondents make two erroneous assumptions.... The second erroneous assumption is [that] the legislation involved must be interpreted as affording merely a remedy in a specific dispute rather than correcting a broader pattern of behavior. It is the latter goal toward which this legislation is directed.
>
> It was the *practice of discrimination,* not merely the humiliating treatment of Roe [the individual denied access to Local 67 in the case at bar], at which the Commission and the trial court took aim in this decree.

*Id.* at 770.[7] *Cf. Quaker Oats Co. v. Cedar Rapids Human Rights Comm'n,* 268 N.W.2d 862, 868 (Iowa 1978) (remedies available under chapter 601A do not include class relief in the sense that an individual plaintiff may not recover damages

on behalf of all persons similarly discriminated against, at least absent class certification under the Iowa Rules of Civil Procedure).

■ C. *Adequacy of the damages awarded.* Lynch likewise raises a remedies issue in her cross-appeal. Her argument is that the district court's $10,000 award to her is so grossly inadequate that we should remand the case with instructions to increase the award, or increase the award ourselves. Lynch points out that her award is less than the awards in other reported sexual harassment cases, and that the court made no separate award for special damages she had claimed.

The district court found that Lynch suffered mental anguish and depression as a result of the City's illegal conduct. The court also found, however, that much of the emotional distress Lynch blamed on the City was attributable to turmoil in Lynch's personal life, the details of which we need not disclose except to note that the turmoil was unrelated to her employment. The court found that Lynch had failed to prove any permanent damage from the sexual harassment she suffered. The court awarded Lynch $10,000 for the emotional distress caused by the City and impliedly gave no award for the other items of requested damages. The court also awarded Lynch reasonable attorney fees. *See* Iowa Code § 601A.15(8)(a)(8).

Determining the amount of damage attributable to a defendant's conduct is a matter for the trier of fact. *Frantz v. Knights of Columbus,* 205 N.W.2d 705, 712 (Iowa 1973). Our review on this issue is for an abuse of discretion. *See Witte v. Vogt,* 443 N.W.2d 715, 716 (Iowa 1989) (trial court's refusal to grant new trial for inadequacy of jury verdict reviewed for abuse of discretion). The adequacy of the award in a particular case depends on the unique facts of that case. *Id.* Comparison with other cases is of little value. *House-*

---

**7.** *Iron Workers* was decided under Iowa Code chapter 105A (1971). *Iron Workers,* 191 N.W.2d at 761. Chapter 105A is the statutory predecessor of current chapter 601A, both being codifications of the Iowa Civil Rights Act of 1965.

The remedy provisions of the two codifications are very similar. *Compare* Iowa Code § 105A.9(12) (1971) *with* Iowa Code § 601A.15(8) (1985).

*holder v. Town of Clayton,* 221 N.W.2d 488, 493 (Iowa 1974). A verdict is inadequate when uncontroverted facts show that it bears no reasonable relationship to the loss suffered by the plaintiff, or in other equally extreme circumstances. *See Witte,* 443 N.W.2d at 716; *Frantz,* 205 N.W.2d at 712 (supreme court will not interfere with trier of fact's allowance of damages unless it clearly appears the verdict is flagrantly excessive or inadequate, or so out of reason as to shock the conscience or sense of justice or raise a presumption it is the result of passion, prejudice or other ulterior motive or is lacking in evidential support).[8]

The district court's findings on the causes of Lynch's emotional problems are supported by the evidence. The amount and basis of the judgment are reasonably related to the loss Lynch suffered as a result of the City's conduct. We find no abuse of discretion here.

V. *Constitutional issues.* As noted previously, Iowa Code section 601A.6(1)(a) makes it an unfair or discriminatory practice for any person to:

> refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, or to otherwise discriminate in employment against any applicant for employment or any employee because of the ... sex ... of such applicant or employee, unless based upon the nature of the occupation.

The City argues that the "or to otherwise discriminate in employment" language in this statute is unconstitutionally vague so that it cannot be applied to make it illegal to maintain a sexually hostile work environment through sexual harassment. This challenge presumably is brought under the due process clause of the fourteenth

amendment to the United States Constitution.

■ A statute is unconstitutionally vague if it does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. *City of Cedar Falls v. Flett,* 330 N.W.2d 251, 256 (Iowa 1983). But literal exactitude is not required. *Id.* "If the statute's meaning is fairly ascertainable by reliance on generally accepted and common meanings of words used, or by reference to the dictionary, related or similar statutes, the common law, or previous judicial constructions, due process is satisfied." *Id.* In addition, words in a statute must be read in context.

The construction we give section 601A.6(1)(a) today is not such that a person of ordinary intelligence, when confronted with the statute and its history of judicial enforcement, would be surprised to learn that the City's conduct in this case was illegal. The statute plainly bans *any* sex discrimination in employment, unless based upon the nature of the occupation. That a statute is broad is not to say that it is unconstitutionally vague. The conditions under which employees work are clearly a facet of employment regulated by the statute,[9] and the treatment of a person by their coworkers clearly affects working conditions. Federal courts have reached this result on statutory language very similar to that of the Iowa Civil Rights Act. *See, e.g., Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (sex discrimination by harassment which creates a hostile or abusive work environment is discrimination in the "terms, conditions or privileges of employment" actionable under 42 U.S.C. § 2000e–2(a)(1)); *Hall v. Gus Const. Co., Inc.,* 842 F.2d 1010 (8th Cir.1988) (verbal abuse of a sexual nature actionable under both 42 U.S.C. § 2000e et seq. and the Iowa

---

8. In *Householder,* 221 N.W.2d at 493, we found a jury's verdict inadequate where it was for less than the plaintiff's *undisputed* special damages and the circumstances raised the specter of an impermissible compromise verdict. In contrast, Lynch's claimed special damages are disputed and there is no suggestion of a compromise verdict, the case having been tried to the court. Most significantly, Lynch's $10,000 award is well in excess of the special damages she

claimed. She was also awarded reasonable attorney fees. We cannot say that the court's award to Lynch is flagrantly inadequate.

9. We note that the Iowa Civil Rights Commission has interpreted the Iowa Civil Rights Act as prohibiting sex discrimination "with regard to terms and conditions of employment." 161 Iowa Admin.Code § 8.54(1).

Civil Rights Act). It is no surprise that the Iowa statute, too, prohibits maintenance of a sexually hostile working environment through sexual harassment.

We hold that Iowa Code section 601A.6(1)(a) is not unconstitutionally vague. The "otherwise discriminate in employment" language may constitutionally be construed to make it illegal to maintain a sexually hostile work environment through sexual harassment, including verbal abuse.

VI. *Leave to amend the City's answer.* At the pretrial hearing in this case, the City requested leave to amend its answer to assert the defense that if the Iowa Civil Rights Act prohibited the conduct of T. Lynch and Nielsen, then it unconstitutionally proscribed their rights under the first amendment to the United States Constitution. The pretrial hearing was nearly three years after the lawsuit was filed and only days before trial. The district court refused to allow the amendment.

Leave to amend a pleading is to be freely given when justice so requires. Iowa R.Civ.P. 88. A motion for leave to amend is directed to the trial court's discretion, and the court's ruling on the motion will be disturbed only for a clear abuse of discretion. *M–Z Enterprises, Inc. v. Hawkeye–Security Ins. Co.*, 318 N.W.2d 408, 411 (Iowa 1982). Late amendment should not be allowed if it would substantially change the issues in the case. *Bremicker v. MCI Telecommunications Corp.*, 420 N.W.2d 427, 429 (Iowa 1988).

The City's proffered amendment would have injected a complex constitutional issue into this case only days before trial. The district court did not abuse its discretion in refusing to allow the amendment.

VII. *Disposition.* We find no error in this case. The judgment of the district court is affirmed. Costs on appeal are taxed to the City.

AFFIRMED.