**Roxanne (Pavlis) EDMUNDS, Plaintiff–Appellant,**

**and**

**Steven Edmunds, Plaintiff,**

**v.**

**MERCY HOSPITAL, CEDAR RAPIDS, Iowa, and William Marsh, Defendants–Appellees.**

**No. 92–498.**

Court of Appeals of Iowa.

May 25, 1993.

Gary L. Robinson and Kimberly A. Ten Eick of Klinger, Robinson, McCuskey & Ford, Cedar Rapids, for appellant.

David A. Elderkin and Edward M. Blando of Elderkin & Pirnie, P.C., Cedar Rapids, for appellees.

Heard by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

Plaintiff, Roxanne Edmunds (formerly Roxanne Pavlis), appeals the district court's judgment dismissing her petition seeking damages under the Iowa Civil Rights Act for sexual harassment and for intentional infliction of emotional distress.[1]

This case stems from Roxanne's claim that she was sexually harassed by her supervisor, William Marsh, during her employment as a nurse in the substance abuse treatment unit at Mercy Hospital.

In early 1989, Roxanne was hired as a registered nurse in the treatment unit. She claims that during the course of her employment, Marsh would, with increasing frequency, bring her into his office to discuss personal matters. Roxanne claims at some of these meetings Marsh would hug her tightly. After she became involved with Steven Edmunds, Marsh made the relationship known to other staff members at a staff meeting. She was then required to attend interpersonal relationship staff meetings more frequently than other nurses. She claims that these actions caused friction on the nursing staff and that some members requested that she resign. In March 1990, Roxanne resigned.

Marsh denied engaging in any inappropriate conduct with Roxanne. The defendants argue that Roxanne wore inappropriate dress and engaged in other conduct inappropriate for patient treatment. The defendants also claim that Roxanne had a bad working relationship with other nurses and that her work was adversely affected by her relationship with Steven.

After Roxanne received a right to sue letter from the Iowa Civil Rights Commission regarding her sexual harassment claim, the plaintiffs filed this petition. Beginning January 27, 1992, the case was tried before the court. At the close of the plaintiffs' case, the court granted the defendants' motion to dismiss the plaintiffs' claims for intentional infliction of emotional distress.

---

1. The other plaintiff, Steven Edmunds, Roxanne's husband and a former counselor at the treatment unit, does not appeal the district court's ruling.

On February 27, 1992, the district court entered its findings of fact, conclusions of law, and ruling dismissing the sexual harassment claim for failure of proof. The court determined credibility issues against Roxanne.

Roxanne appeals. We affirm.

■ Where the case was tried as a law action, our scope of review is for correction of errors at law. *Lynch v. City of Des Moines*, 454 N.W.2d 827, 829 (Iowa 1990). The district court's findings of fact are entitled to the weight of a special verdict and are binding on appeal if supported by substantial evidence. *Id.;* Iowa R.App.P. 14(f)(1). We are prohibited from weighing the evidence or the credibility of the witnesses. *Grinnell Mut. Reins. Co. v. Voeltz*, 431 N.W.2d 783, 785 (Iowa 1988).

A finding of fact is supported by substantial evidence if the finding may be reasonably inferred from the evidence. In evaluating sufficiency of the evidence, we view it in its light most favorable to sustaining the court's judgment. We need only consider evidence favorable to the judgment, whether or not it was contradicted.

*Briggs Transp. Co. v. Starr Sales Co.*, 262 N.W.2d 805, 808 (Iowa 1978).

■ "Evidence is substantial or sufficient when a reasonable mind could accept it as adequate to reach the same findings." *Waukon Auto Supply v. Farmers & Merchants Sav. Bank*, 440 N.W.2d 844, 846 (Iowa 1989) (citation omitted). Evidence is not insubstantial merely because it could support contrary inferences. *Grinnell Mut. Reins. Co.*, 431 N.W.2d at 785 (citation omitted).

## I. Sexual Harassment Claim.

Roxanne argues the trial court erred in finding no harassment had taken place. Roxanne's claim of harassment rests on the conduct of William Marsh, her direct supervisor and director of Sedlacek Unit at Mercy Hospital. Roxanne claims Marsh subjected her to repeated sexual advancements and sexual harassment and subjected her to a hostile, offensive and abusive work environment.

The Iowa Civil Rights Act makes it illegal to:

refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, *or to otherwise discriminate in employment* against any applicant for employment or employee because of the ... sex ... of such applicant or employee, unless based upon the nature of the occupation.

Iowa Code § 601A.6(1)(a) (1991) (emphasis added).

■ Our supreme court has recognized that maintenance of a sexually hostile work environment through sexual harassment is a form of illegal sex discrimination under section 601A.6(1)(a) of the Iowa Civil Rights Act. *Lynch v. City of Des Moines*, 454 N.W.2d 827, 833 (Iowa 1990). In order to establish a valid claim of maintenance of a sexually hostile work environment through sexual harassment, it must be proven that:

(1) the plaintiff belongs to a protected class;

(2) the plaintiff was subject to unwelcome sexual harassment;

(3) the harassment was based upon sex;

(4) the harassment affected a term, condition or privilege of employment, and;

(5) the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action.

*Id.* Where sexual harassment in the workplace is so pervasive and severe that it creates a hostile or abusive work environment, so that the plaintiff must endure an unreasonably offensive environment or quit working, the sexual harassment affects a condition of employment. *Id.* at 834. The existence of a sexually hostile or abusive working environment must be established by the totality of the circumstances. *Vaughn v. Ag Processing, Inc.*, 459 N.W.2d 627, 633 (Iowa 1990).

■ The district court found that Marsh never made any sexual overtures to Roxanne and did not discuss sexual matters or his family with her. Marsh admitted to hugging Roxanne twice, but claimed it was at Roxanne's request. The staff members, including Steven Edmunds, testified that hugging was common on the unit.

The evidence revealed patients in the Sedlacek Unit receive physical and psychological treatment under an interdisciplinary team approach with staff collectively working with all patients and acting as role models for them.

The nurses approached Roxanne about her clothing and makeup which they were concerned might be hindering the recovery of the male patients by taking the focus off the patients and placing it onto herself. Between September and October of 1989, the nurses were also concerned about Roxanne and Steven Edmunds' relationship. Several of the nurses testified they confronted Roxanne and Steven after they observed Steven spending a lot of time around the nurses station and saw Steven and Roxanne in intimate conversations touching each other. The nurses were concerned because in 1987, while working at the Sedlacek Unit, Steven became involved with a different nurse. His work significantly deteriorated. Steven admitted that too much stress was being caused by the relationship and both he and the other nurse resigned. Steven returned to work at the unit approximately three months later.

The testimony of the counselors and nurses show that Roxanne and Steven's relationship was discussed in interpersonal relationship meetings (IPRs) because the staff felt the relationship was hurting patient care. It is at this point that Marsh began having more frequent one-on-one meetings with Roxanne and requiring Roxanne to attend IPR meetings weekly.

In late October of 1989, Roxanne and Steven met with the hospital administration to complain about their relationship being discussed in IPR meetings. Roxanne made no allegations that Marsh was sexually harassing her. Furthermore, nurse Dorothy Johnston testified that when the personal meetings with Marsh and Roxanne increased, she specifically asked Roxanne whether Marsh ever made any sexual advances towards her and Roxanne replied no.

The district court concluded that "nothing of a sexual nature against Mr. Marsh has been substantiated and the work environment of which [the plaintiff] Ms. Pavlis complains revolved around the concern of Mr. Marsh and the staff of the lack of patient care directly related to Ms. Pavlis and her paramour prior to his resignation."

We conclude that substantial evidence supports the district court's findings of fact and that no error of law occurred. Accordingly, we affirm.

## II. *Intentional Infliction of Emotional Distress.*

■ Roxanne next argues the district court erred in dismissing her claim for intentional infliction of emotional distress with respect to her separate tort claim. Proof of this tort requires:

(1) Outrageous conduct by the defendant;

(2) The defendant's intentional causing, or reckless disregard of the probability of causing emotional distress;

(3) Plaintiff suffered severe or extreme emotional distress; and

(4) Actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

*Vaughn v. Ag Processing, Inc.,* 459 N.W.2d 627, 635–36 (Iowa 1990) (quoting *Vinson v. Linn–Mar Community School Dist.,* 360 N.W.2d 108, 118 (Iowa 1984)).

In order for conduct to be considered outrageous it must be " 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' "

*Id.* (citing *Harsha v. State Sav. Bank,* 346 N.W.2d 791, 801 (Iowa 1984) (quoting Restatement (Second) of Torts § 46 comment d (1965)).

We agree with the trial court that Roxanne did not satisfy her burden of proof with respect to her claim of intentional infliction of emotional distress.

Roxanne points out that emotional distress is also a recoverable element of damages in a private action for violation of the Iowa Civil Rights Act even without a showing of physical injury, severe distress, or outrageous conduct. *Lynch v. City of Des Moines*, 454 N.W.2d 827, 835 (*citing Hy–Vee v. Iowa Civil Rights Commission*, 453 N.W.2d 512, 525 (Iowa 1990). Since we found in division I of this opinion that Roxanne has not proved a violation of the Iowa Civil Rights Act, we need not reach the issue of what damages she might be entitled to under the Iowa Civil Rights Act.

**AFFIRMED.**