**CITY OF HAMPTON, Appellant,**

v.

**IOWA CIVIL RIGHTS COMMISSION, Appellee.**

**Dorothy Abbas, Intervenor–Appellee.**

**No. 95–769.**

Supreme Court of Iowa.

Sept. 18, 1996.

C.W. McManigal and Richard R. Winga of Laird, Heiny, McManigal, Winga, Duffy & Stambaugh, P.L.C., Mason City, for appellant.

Thomas J. Miller, Attorney General, and Rick Autry, Assistant Attorney General, for appellee Iowa Civil Rights Commission.

Michael J. Carroll of The James Law Firm, P.C., Des Moines, for intervenor-appellee Dorothy Abbas.

Considered by McGIVERIN, C.J., HARRIS, LARSON and TERNUS, JJ., and SCHULTZ, Senior Judge.*

LARSON, Justice.

Dorothy Abbas, a Hampton city employee, filed complaints with the Civil Rights Commission charging sex discrimination and retaliation in violation of Iowa Code chapter 601A (1987). The commission awarded her damages, and the district court affirmed. We affirm, as modified, and remand for further proceedings.

## I. *The Facts and Proceedings.*

Dorothy Abbas worked in the office of the city clerk in Hampton. In August 1987 she filed a complaint with the Iowa Civil Rights Commission alleging sex discrimination by city officials. In October 1989 her complaint was dismissed by the commission after a finding of no probable cause.

While proceedings on this complaint were still pending, Abbas filed a second complaint. This time she claimed that the city clerk, her supervisor, retaliated against her for filing her original discrimination claim by threatening litigation, refusing to speak to her, taking work from her, increasing scrutiny of her work, and reducing her from full-time to part-time employment.

On Abbas's retaliation complaint, the commission found probable cause and referred the case to conciliation. The conciliation attempt failed. Abbas and the commission filed a voluntary dismissal of the individual defendants, leaving the city as the sole defendant on the condition that the city would waive any argument that it was not legally responsible for the actions of its employees.

A contested case hearing was held on July 19, 1991, and in December 1992 the administrative law judge (ALJ) issued a proposed decision and order finding that Abbas had proven retaliation in violation of Iowa Code section 601A.1. The city filed exceptions to the proposed decision. The commission considered the case at its January 19, 1993 meeting. The commission deadlocked three to three, and the matter was automatically carried over to its meeting in February. At that meeting, the commission rejected the ALJ's proposed decision by a three-to-two vote and dismissed the case.

Abbas petitioned for a rehearing. At the commission's March meeting, the members were not able to reach a majority decision, and as a result, Abbas's petition for rehearing was deemed to be denied. Abbas filed a petition for judicial review, and the city intervened.

In February 1994, the district court remanded the matter to the commission so that it could make findings of fact and conclusions of law as required by Iowa Code section 17A.16(1) (1993). The commission, concluding that the order from the district court was a general remand, reconsidered the case in full and voted to adopt the original ALJ decision. The city filed a petition for judicial review, and Abbas intervened. The district court affirmed the final decision of the commission, and the city now appeals.

## II. *The Issues.*

On appeal the city's four issues involve: (1) the scope of the district court's remand to the commission, (2) the commission's finding of retaliation, (3) the amount of damages awarded for emotional distress, and (4) Abbas's request for attorney fees.

**A.** *The scope of the remand.* When the civil rights commission entered its final decision, it did not "disclose a sound factual and legal basis for its decision" as required by our cases. *Des Moines Indep. Community Sch. Dist. v. Dep't of Job Serv.,* 376 N.W.2d 605, 610–11 (Iowa 1986); *see Taylor v. Iowa Dep't of Job Serv.,* 362 N.W.2d 534, 537 (Iowa 1985). Without any analysis of the facts or law, the commission merely stated that it rejected the proposed decision. The district court was therefore correct when it remanded the case to the commission for detailed findings and conclusions, and the city does not argue this point.

The city contends, however, that the remand was limited to providing factfindings and conclusions to support the decision previ-

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1995).

ously made by the commission, *i.e.*, that Abbas was not entitled to relief. Abbas counters that the remand was general and that it allowed the commission to reach a different conclusion, which it did.

We believe that the remand to the commission was general in scope. This conclusion is based in part on the rationale behind the requirement of full agency findings and conclusions, which is explained by one authority:

> The obligation to give a reasoned decision is a substantial check upon misuse of power. A decision supported by specific findings is much less likely to be a product of caprice or careless consideration. Requiring articulation of the reasoning process evokes care on the part of the decider.

Bernard Schwartz, *Administrative Law* § 7.29, at 456 (3d ed.1991) (footnote omitted).

 On remand an agency should be free to reach a conclusion different from its original conclusion if the agency's greater "articulation of the reasoning process," *id.,* leads it to that conclusion. We hold, therefore, that unless the order to an agency provides otherwise a remand is general and the agency is free to address the claim anew.

 This is supported by our analogous cases involving a remand by this court to the district court. Unless the remand limits the issues to be considered, the case should be reviewed in its entirety. *See Mundy v. Olds,* 254 Iowa 1095, 1105–06, 120 N.W.2d 469, 475–76 (1963).

 Our conclusion that the district court's remand was general in scope is supported by the language of the remand order itself. The court quoted Iowa Code section 17A.16(1), which provides that "final decisions shall include findings of fact and conclusions of law, separately stated." It then stated that

> [s]ince this section of the Code was not followed, the case should be remanded for a final decision from the agency, including findings of fact and conclusions of law.

As the commission notes on appeal, the court's remand order says *a* final decision, not *the* final decision.

We conclude that the remand was general in scope and that the commission properly considered the entire case.

**B.** *The finding of retaliation.* The city attacks the commission's finding of retaliation on two grounds: (1) it applied an erroneous legal test for retaliation, and (2) there was not substantial evidence to support the finding.

 1. *The legal test.* To establish a prima facie case of retaliation, the claimant must show that (1) she was engaged in a statutorily protected activity, (2) she suffered adverse employment action, and (3) a causal connection existed between the first two factors. *Hulme v. Barrett,* 449 N.W.2d 629, 633 (Iowa 1989) (*Hulme I* ). The first two elements are not in dispute; the parties disagree only as to the third element, causation.

The ALJ applied a test for causation which was based on a federal case requiring that the claimant merely show that the adverse employment decision "was not wholly unrelated" to the filing of the complaint. *See Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1525 (11th Cir.1991).

However, the ALJ's proposed decision filed in December 1992 did not refer to a second *Hulme* case, filed in January of that year, which elaborated on the causation element under *Hulme I,* stating:

> The purpose of the law is to protect employees who utilize civil rights acts to redress their grievances. But the causation standard is a high one. The "causal connection" cited in *Hulme* [*I* ] must be a "significant factor" motivating the adverse employment decision.

*Hulme v. Barrett,* 480 N.W.2d 40, 42 (Iowa 1992) (citation omitted) (*Hulme II* ).

We said in *Hulme II* that

> the filing of the discrimination claim must be a substantial factor prompting the termination. In other words, the protection afforded by anti-retaliatory legislation does not immunize the complainant from discharge for past or present inadequacies,

unsatisfactory performance, or insubordination.

*Id.* at 43.

In *Polk v. Yellow Freight System, Inc.,* 801 F.2d 190 (6th Cir.1986), the federal court discussed the "significant factor" test under a Michigan civil rights statute, stating that

> the "significant factor" standard imposes a more lenient standard than the "but for" test urged by defendant [employer], but that it requires a showing of more than a "causal link." A factor can be a "cause" without being "significant." Only the latter is sufficient to show retaliatory discharge.

*Polk,* 801 F.2d at 199.

■ We believe there is merit in the city's argument that the "wholly unrelated" test for causation applied by the ALJ was not the equivalent of a "substantial" connection required by *Hulme II.* However, this argument was not raised before the commission and was therefore waived. *Soo Line R.R. v. Iowa Dep't of Transp.,* 521 N.W.2d 685, 691 (Iowa 1994).

■ *2. The evidence.* If supported by substantial evidence, the findings of fact made by the agency are binding on the reviewing court. Iowa Code § 17A.19(8)(f).

> Evidence is substantial when a reasonable person could accept it as adequate to reach the same findings. Conversely, evidence is not insubstantial merely because it would have supported contrary inferences. Nor is evidence insubstantial because of the possibility of drawing two inconsistent conclusions from it. The ultimate question is not whether the evidence supports a different finding but whether the evidence supports the findings actually made.

*Gaskey v. Iowa Dep't of Transp.,* 537 N.W.2d 695, 698 (Iowa 1995).

■ As already noted, to establish a prima facie case of retaliatory discharge, a complainant must prove (1) involvement in statutorily protected activity, (2) adverse employment action, and (3) a causal connection between the two. *Hulme II,* 480 N.W.2d at 42. Once a prima facie case is established, a presumption of discrimination attaches that may be rebutted by the employer and then reproven by the plaintiff. *See Trobaugh v. Hy–Vee Food Stores, Inc.,* 392 N.W.2d 154, 157 (Iowa 1986).

We believe the evidence clearly shows the first two elements, *i.e.,* that (1) the claimant took part in a statutorily protected activity, her first claim of sex discrimination; and (2) she suffered adverse employment action through reduction of her hours, increasing scrutiny of her work, and reduction in her pay and benefits.

The crux of the factual issue is whether the third prong, the causal connection, was established. *See Hulme II,* 480 N.W.2d at 42. The record in this case included testimony that when Abbas was reduced from full-time to part-time employment she asked her supervisor for a reason. He replied that he "didn't like that civil rights mess hanging over his head." *See Hulme II,* 480 N.W.2d at 41.

The evidence also included testimony that Abbas's supervisor continually threatened to sue Abbas both before and immediately after she was reduced to part-time employment. The ALJ found that

> [t]he combination of repeated threats to sue Abbas because of statements she made in the complaint, the silent treatment, the refusal to tell her information she needed to do her work, the reduction of her duties, and informing her that she was being reduced to part-time because of the civil rights mess constituted a pattern of retaliatory actions which created a continuously hostile working environment for Abbas.

We conclude that the evidence is substantial enough to support the finding by the agency, *i.e.,* that a reasonable person would accept the proof as adequate to reach the conclusion that the retaliatory motive was a significant factor in the adverse employment decision. *Hulme II,* 480 N.W.2d at 41.

### III. *The Damages.*

■ The city complains that the award of $50,000 for the plaintiff's emotional distress was excessive. We grant the Iowa Civil Rights Commission discretion "to take the necessary remedial action as in the judg-

ment of the commission will carry out the purpose of this [civil rights] chapter." Iowa Code § 601A.15(8) (1987) (presently codified at § 216.15(8)). Accordingly, we review the award of damages for abuse of discretion. *Lynch v. City of Des Moines*, 454 N.W.2d 827, 836 (Iowa 1990). We have held that an award for emotional distress damages is appropriate in a civil rights case without a showing of physical injury, severe distress, or outrageous conduct. *Hy–Vee Food Stores, Inc. v. Iowa Civil Rights Comm'n*, 453 N.W.2d 512, 526 (Iowa 1990). At the hearing, Abbas complained that she had become severely upset and the ALJ noted that her demeanor was unusual, stating "[i]t is rare for such severe pain to be reflected in a complainant's voice, demeanor, and testimony."

Abbas testified that she was upset by her supervisor's threats to sue her and that she was experiencing an inability to sleep. In awarding her $50,000 for her emotional distress, the ALJ relied almost solely on the testimony of Abbas and her daughter. Abbas presented no medical evidence. When considering the amount of damages, it is not particularly helpful to compare this with other cases. *Lynch*, 454 N.W.2d at 836. Nevertheless, we note that this award exceeds any under similar circumstances in a civil rights case. For example, in *Hamer v. Iowa Civil Rights Commission*, 472 N.W.2d 259, 266 (Iowa 1991), we approved an award of $5000 for emotional distress based on sex discrimination. In *Lynch*, we approved an award of $10,000 based on a sexually hostile work environment, 454 N.W.2d at 836–37, and in *Hy–Vee Food Stores, Inc. v. Iowa Civil Rights Commission*, we approved an award of $10,000 for emotional distress based on sex and national origin discrimination, 453 N.W.2d at 525–26. In *Chauffeurs, Teamsters & Helpers Local Union No. 238 v. Iowa Civil Rights Commission*, 394 N.W.2d 375, 382–84 (Iowa 1986), we approved $15,000 as an award based on racial discrimination. While Abbas cites other cases that have awarded amounts greater than $50,000, none of these are Iowa cases.

 Our civil rights statute does not allow for punitive damages. *Id.* at 384. Based on the relatively small amount of evidence supporting the award and the total lack of any medical or psychiatric evidence to support it, we believe the commission abused its discretion in allowing $50,000. We believe that $20,000 was an adequate award for emotional distress, and we order the judgment to be modified accordingly.

### IV. *The Award of Attorney Fees.*

After the district court approved the award to Abbas, she filed a rule of civil procedure 179(b) motion to request attorney fees. This motion was filed after the ten days provided by the rule, and on that basis the district court denied it. Abbas later filed an application for attorney fees; however, the court refused to consider it on the ground it was not timely.

 Rule 179(b) is not a proper vehicle for requesting attorney fees; however, we believe the motion should have been considered to be an application for fees, and the court should have ruled on it accordingly. The application for fees is not required to be filed within ten days. We therefore remand the case to the district court for consideration of her application for attorney fees.

As modified, we affirm the judgment of the district court. We remand for entry of a corrected judgment and for consideration of Abbas's application for attorney fees. We express no views as to whether such application shall be granted, or in what amount.

**AFFIRMED AS MODIFIED AND REMANDED.**