CADY, Chief Justice
(concurring in part and.dissenting in part).
I concur in the résult reached in the opinion authored by Justice Waterman. I agree the jury verdict 'must be reversed and a new trial must be granted. I write separately because I do not agree with the result or reasoning on all the issues addressed in the opinion by Justice Waterman. As to those issues with which I disagree, I join in the opinion by Justice Appel.-
I. Direct Negligence Claim.
The two opinions in this case both hold that a plaintiff may pursue a hostile-work-environment claim against an employer under the Iowa Civil Rights Act based on supervisor harassment under a legal theory of either 'vicarious liability or negligence. I concur. The two opinions also hold an employer cannot assert the affirmative defense recognized for vicarious liability claims in Faragher v. City of Boca Raton, 524 U.S. 775, 807-08, 118 S.Ct. 2275, 2292-93, 141 L.Ed.2d 662 (1998), and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 764-65, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998), when defending a negligence action. To this, I also concur. The dispute, however, is whether the district court erred in failing to instruct the jury that the employee must prove the employer failed to take prompt and appropriate remedial action to end the harassment. I conclude the district court erred in failing to integrate this concept into 'its marshaling instruction.
It is a general rule of law that an employer is hable for negligently creating or continuing a hostile work environment. See Vance v. Ball State Univ., 570 U.S. -, -—, 133 S.Ct. 2434, 2452, 186 L.Ed.2d 565 (2013). This is a correct statement of law, but far too general to be used as a marshaling instruction for a claim of employer *602 negligence based on sexual harassment by a supervisor. Negligence in continuing a hostile work environment is required to be analyzed within the context of whether or not the employer failed to take reasonable remedial action within a reasonable period of time. Boyle v. Alum-Line, Inc., 710 N.W.2d 741, 747-48 (Iowa 2006). This was the essence of HaskenhofPs claim based on supervisor harassment. When the plaintiff asserts a vicarious liability claim, the essential analysis is presented as an affirmative defense. See Farmland Foods, Inc. v. Dubuque Human Rights Comm’n, 672 N.W.2d 733, 744 n.2 (Iowa 2003). When the plaintiff asserts a negligence claim, the analysis comes within the reasonable care standard of negligence. Lynch v. City of Des Moines, 454 N.W.2d 827, 833 (Iowa 1990). The employee must establish that a reasonable employer knew or should have known of the harassment and failed to take reasonable action to stop it within a reasonable period of time. Id. The instruction in this case totally failed to inform the jury of this essential analysis. As a result, I would conclude the instruction materially misstated the law to the detriment of the employer.
II. Retaliatory Discharge: Causation.
The two opinions disagree on the proper causation standard for retaliatory discharge. I agree the causation standard under the Iowa Civil Rights Act is the same for discrimination claims under Iowa Code section 216.6(l)(a) (2011) as it is for retaliation claims under section 216.11(2). I also agree the standard is “a motivating factor.” Nevertheless, the district court instruction modified this standard to only require that the discrimination “played a part.” This change in the standard was not justified.
In DeBoom v. Raining Rose, Inc., we explained that a motivating factor must
only have “played a part” and “need not have been the only reason.” 772 N.W.2d 1, 13 (Iowa 2009). Yet, this was only done to aid the jury in applying the standard, not to eliminate the central concept of the standard that the protected activity be a motivating factor in the employer’s decision. See id. A motivating factor is one that helped compel the decision, and the “played a part” language exists only to clarify that the motivating factor need not be the only factor. See id.; see also Hasan v. U.S. Dep’t of Labor, 400 F.3d 1001, 1006 (7th Cir. 2005) (“A motivating factor is a factor that weighs in the defendant’s decision to take the action complained of—in other words, it is a consideration present to his mind that favors, that pushes him toward, the action. It is a, not necessarily the, reason that he takes the action. Its precise weight in his decision is not important.” (Citations omitted.)). Therefore, I concur in the opinion of Justice Appel to adopt the motivating factor causation standard. However, I would find that the jury instruction in this case failed to capture this standard.
III. Retaliatory Discharge: Adverse Employment Action.
Both opinions agree an adverse employment action is one that “well might have ‘dissuaded a reasonable worker from making or supporting a charge of discrimination.’ ” Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006) (quoting Rochan v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Both opinions also agree the district court erred in defining an “adverse employment action” by including examples of actions that would be adverse as a matter of law. I concur on both of these issues. As Burlington Northern instructs, and as reason dictates, an adverse action “depend[s] upon the particular circumstances.” 548 U.S. at 69, 126 S.Ct. at 2415. *603 The dispute, therefore, is whether the error was harmless. It was not.
The court instructed the jury that one example of an adverse action is a constructive discharge. A constructive discharge occurs “when the employer deliberately makes an employee’s working conditions so intolerable that the employee is forced into an involuntary resignation.” Van Meter Indus. v. Mason City Human Rights Comm’n, 675 N.W.2d 503, 511 (Iowa 2004) (quoting First Judicial Dist. Dep’t of Corr. Servs. v. Iowa Civil Rights Comm’n, 315 N.W.2d 83, 87 (Iowa 1982)). We recognize constructive discharge to discourage “employers’ ‘end runs’ around the law”—employers know they cannot retaliate by formally terminating the employee, so they may attempt to force the employee to quit. Balmer v. Hawkeye Steel, 604 N.W.2d 639, 641 (Iowa 2000). Whether a discharge is formal or compelled, if it was motivated by the employee’s engaging in a protected activity, it is still prohibited retaliation.
But constructive discharge can also be a separate claim, recognized in extreme cases of hostile work environments. In this type of constructive discharge claim, the employee must show the environment was so bad he or she had no choice but to quit. See Pa. State Police v. Suders, 542 U.S. 129, 147-48, 124 S.Ct. 2342, 2354, 159 L.Ed.2d 204 (2004) (“A hostile-environment constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign.”). An employee may want to prove constructive discharge in a hostile-work-environment claim “because, as a general rule, employees are entitled to back pay only when they have been actually or constructively discharged.” Van Meter, 675 N.W.2d at 510-11. In a hostile-environment constructive discharge claim, the employer’s motivation for the constructive discharge is irrelevant. See id. at 512. In a retaliatory discharge claim, the employee must show the employer constructively discharged the employee “because” the employee engaged in a protected activity. Iowa Code § 216.11(2). These two uses of constructive discharge are related, but distinct.
Here, the jury was instructed Hasken-hoff must show “she was subjected to sexual harassment or retaliation[,] which[] made her believe there was no chance for fair treatment at Homeland.” (Emphasis added.) It is possible the jury was confused by these alternatives. Under these instructions, a jury could find the sexual harassment was so severe and pervasive that Haskenhoff had no choice but to quit. But, Haskenhoff did not advance constructive discharge based on an extreme case of hostile work environment. She used constructive discharge as an example of retaliation. Even if the jury appropriately found constructive discharge based on the severity of the hostile work environment, it does not mean Homeland retaliated against Haskenhoff for reporting the harassment. Therefore, the erroneous instruction on adverse action was not harmless, and Homeland is entitled to reversal and a new trial.
IY. Constructive Discharge Instruction.
Both opinions agree that the district court did not err in the constructive discharge instruction by explaining that an employer does not need to want the employee to quit. Both opinions also agree the district court erred by using a subjective standard in the constructive discharge instruction. I concur on both of these issues. See Van Meter, 675 N.W.2d at 511-12. The dispute is whether the district court erred in refusing to instruct the jury *604 that the employee must give the employer a reasonable chance to resolve the problem before it may find the working conditions were so intolerable a reasonable employee would have been forced into resignation. I conclude the district court did not err in refusing to give this instruction because it would not be a correct statement of the law.
Constructive discharge is a concept of reasonableness. At times, it would not be reasonable for an employee to quit without giving the employer a chance to resolve the problem. See id. at 511. But, at other times, it would not be reasonable to require an employee to remain in intolerable working conditions. See id. Evidence indicates employees often choose not to report discrimination in the workplace at the time it occurs. See Brief of Amici Curiae NAACP Legal Defense & Educational Fund, Inc. & The National Women’s Law Center in Support of Petitioner, Green v. Brennan, 578 U.S. -, 136 S.Ct. 1769, 195 L.Ed.2d 44 (2016) (No. 14-613), 2015 WL 4237675, at *14-15 & nn.10-11 (compiling studies). If the unreported discrimination then turns the workplace intolerable, no employee should reasonably be expected to remain on the job merely to give the employer a chance to fix it. Consequently, I concur in the opinion of Justice Appel that the district court did not err in refusing to instruct the jury that an employer must have a reasonable time to fix the problem.
Y. Conclusion.
First, an employee may bring a direct-negligence action against an employer based on a supervisor’s harassment. The employer does not have the benefit of an affirmative defense when defending such a claim. The employee must, however, show the employer knew or should have known of the harassment and failed to take reasonable action to stop it within a reasonable period of time. Second, in a claim for retaliatory discharge, the employee must show the employee’s engaging in a protected activity was a motivating factor in the employer’s decision to take an adverse employment action. An adverse-employment action is one that would have deterred a reasonable employee from filing a complaint. Actions are not ordinarily adverse as a matter of law, but depend on the circumstances. An employer taking such an action need not really want the employee to quit, but the employee’s decision to quit must be objectively reasonable. A constructive discharge may occur if a reasonable employee would find the working conditions intolerable, even if that employee did not give the employer an opportunity to correct the problem.
Because the jury instructions in this case did not accurately state the above legal principles, I concur in part and with the result of the opinion authored by Justice Waterman. I would remand for retrial on both counts. I dissent in part from that opinion and join in part the opinion authored by Justice Appel for the reasons expressed above.