# IN THE SUPREME COURT OF IOWA

No. 06–1063

Filed August 28, 2009

**ELIZABETH CHACEY DEBOOM,**

Appellant,

vs.

**RAINING ROSE, INC., CHART ACQUISITION CORP., CHARLES HAMMOND, and ESTATE OF ART CHRISTOFFERSEN,**

Appellees.

---

Appeal from the Iowa District Court for Linn County, Thomas M. Horan, Judge.

Plaintiff challenges jury instructions in an action against her employer alleging sex and pregnancy discrimination. **REVERSED AND REMANDED WITH DIRECTIONS.**

Beth A. Townsend of Townsend Law Office, P.L.C., West Des Moines, for appellant.

Patrick M. Roby and Robert M. Hogg of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellees.

**STREIT, Justice.**

Elizabeth DeBoom was fired from her job at Raining Rose, Inc. shortly after returning from maternity leave. She filed suit against the company alleging she was impermissibly fired because of her sex and pregnancy. After a defense verdict, DeBoom appealed alleging several deficiencies in the jury instructions. We hold the district court should have instructed the jury it could infer discrimination if it believed Raining Rose's proffered reasons for terminating DeBoom were a "pretext." Further, DeBoom was prejudiced by an erroneous definition of "determining factor" in the jury instructions. We remand for a new trial.

### I. Background Facts and Prior Proceedings.

Elizabeth DeBoom began working for Raining Rose in May 2003 as the company's marketing director.[1] A few weeks later, DeBoom informed Charles Hammond, the company's president, she was pregnant. Hammond asked DeBoom if she planned to return to work after the baby was born, and she said "yes." When Art Christoffersen, the chairman of the board of directors, learned of the pregnancy, he asked DeBoom if she was going to "be like all those other women who find it's this life-altering experience and decide to stay home." DeBoom assured him she was committed to the company. After being on bed rest for approximately two weeks, DeBoom gave birth to a son on January 12, 2004.

Prior to her maternity leave, DeBoom received favorable feedback regarding her work from her employers, especially Hammond. Hammond visited DeBoom after the baby was born and told her the company was eager to have her back.

---

[1]Raining Rose manufactures natural body care products in Cedar Rapids, Iowa. During DeBoom's tenure, the company employed between approximately fifteen and thirty employees.

DeBoom returned to work part-time on March 11, 2004. She testified she had a massive list of projects to be completed. Hammond and Christoffersen gave DeBoom a work evaluation she missed due to her maternity leave. They told her she was doing a great job and gave her a 15% raise. DeBoom began working full-time on April 12. She was terminated on April 20. Hammond told DeBoom her position was being eliminated and she was no longer a good fit for the company. Hammond told DeBoom they were very frustrated she had not completed a major project which she began before maternity leave. He also expressed dismay she had sent "Butt Balm" to a radio deejay for a promotion because Raining Rose did not own the name and had no plans to market the product. According to DeBoom, Hammond told her she "wasn't catching up fast enough from the maternity leave and that they had begun to doubt whether [she] was still committed to [the] job." Hammond denied making that statement. Hammond offered DeBoom the opportunity to do free-lance work for the company, but she declined.

DeBoom filed a claim with the Iowa Civil Rights Commission alleging Raining Rose fired her because of her sex and pregnancy. After the Commission issued a right-to-sue letter, DeBoom filed this lawsuit in the district court.[2] After both parties presented their evidence at trial, Raining Rose made a motion for a directed verdict, asserting DeBoom was not a member of a protected class (i.e., pregnant) at the time of her termination, and she did not present competent evidence to support an inference of discrimination or to support that the reasons given by Raining Rose for terminating her employment were pretext for discrimination. The motion was denied. The jury returned a verdict in

---

[2]DeBoom filed suit against several defendants. For simplicity, we will refer to the defendants collectively as "Raining Rose."

favor of Raining Rose. DeBoom filed a motion for a new trial alleging the district court made several errors with respect to the jury instructions. After the motion was denied, DeBoom appealed on the same grounds. Raining Rose responded the instructions were proper but even if they contained errors, the judgment for Raining Rose should be upheld because the district court should have granted the motion for directed verdict.

## II. Scope of Review.

"We review a trial court's ruling on a motion for directed verdict for correction of errors of law." *Summy v. City of Des Moines*, 708 N.W.2d 333, 343 (Iowa 2006). A directed verdict is required "only if there was no substantial evidence to support the elements of the plaintiff's claim." *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 472 (Iowa 2005). Evidence is substantial when "reasonable minds would accept the evidence as adequate to reach the same findings." *Easton v. Howard*, 751 N.W.2d 1, 5 (Iowa 2008). "Where reasonable minds could differ on an issue, directed verdict is improper and the case must go to the jury." *Stover v. Lakeland Square Owners Ass'n*, 434 N.W.2d 866, 873 (Iowa 1989).

"We review alleged errors in jury instructions for correction of errors at law." *Boyle v. Alum-Line, Inc.*, 710 N.W.2d 741, 748 (Iowa 2006). It is error for a court to refuse to give a requested instruction where it "correctly states the law, has application to the case, and is not stated elsewhere in the instructions." *Vaughan v. Must, Inc.*, 542 N.W.2d 533, 539 (Iowa 1996). Any error in the instructions given "does not merit reversal unless it results in prejudice." *Wells v. Enter. Rent-A-Car Midwest*, 690 N.W.2d 33, 36 (Iowa 2004). Jury instructions should be considered "in their entirety." *Anderson v. Webster City Cmty. Sch. Dist.*,

620 N.W.2d 263, 265 (Iowa 2000). Reversal is warranted if the instructions have misled the jury. *Id.* Prejudicial error occurs when the district court "materially misstates the law." *Id.*

### III. Merits.

Under the Iowa Civil Rights Act of 1965, it is an "unfair or discriminatory practice" to discharge an employee "because of . . . sex." Iowa Code § 216.6(1)(*a*) (2003). Similarly, it is unlawful for an employer to terminate the employment of a woman disabled by pregnancy "because of" her pregnancy. *Id.* § 216.6(2)(*d*). "[T]he legislature's purpose in banning employment discrimination based on sex was to prohibit conduct which, had the victim been a member of the opposite sex, would not have otherwise occurred." *Sommers v. Iowa Civil Rights Comm'n*, 337 N.W.2d 470, 474 (Iowa 1983).

This case was tried shortly after we held plaintiffs seeking damages under the Iowa Civil Rights Act were entitled to a jury trial. *See McElroy v. State*, 703 N.W.2d 385, 394–95 (Iowa 2005). On appeal, DeBoom alleges the district court made four errors with respect to jury instructions. First, she contends the district court erred by refusing to give a "pretext" instruction, i.e., an instruction stating the jury may infer discrimination if it does not believe the employer's proffered reasons for the termination. Second, she claims the district court erred by refusing to give her requested instruction on inconsistent testimony. Third, DeBoom argues the instruction providing the elements of her discrimination claim impermissibly added unnecessary elements, including damages, to her burden of proof. And finally, she claims the instructions that defined "determining factor" were inconsistent and increased her burden of proof.

Raining Rose argues the district court's instructions were proper. Alternatively, the company claims DeBoom was not prejudiced even if the jury instructions were erroneous because Raining Rose was entitled to a directed verdict for two reasons: 1) DeBoom was not a member of the protected class (i.e., pregnant[3]) when she was terminated and 2) she did not present substantial evidence to support an inference of discrimination or to rebut the legitimate non-discriminatory explanation put forth by Raining Rose.

### A. Pregnancy Discrimination.

The Iowa Civil Rights Act prevents an employer from firing an employee because of her sex or pregnancy. The general provisions provide "[i]t shall be an unfair or discriminatory practice for any . . . [p]erson . . . to discharge any employee . . . because of . . . sex . . . ." Iowa Code § 216.6(1). Section 216.6(2)(*d*) deals with pregnancy directly: "An employer shall not terminate the employment of a person disabled by pregnancy because of the employee's pregnancy." Raining Rose contends DeBoom could not qualify for protection under Iowa Code section 216.6 because she was not pregnant at the time of her termination. Raining Rose also contends the district court should not have submitted DeBoom's case to the jury because she did not present substantial evidence to support a claim of discrimination.

To establish a prima facie case of pregnancy discrimination, the plaintiff must demonstrate "(1) she was pregnant; (2) she was qualified for her position; and (3) her termination occurred under circumstances

---

[3]The record seems to indicate that all parties considered DeBoom's claim of discrimination based on her "sex and pregnancy" as a single claim. The jury instructions state "you should interpret the word 'sex' to include not only [DeBoom's] gender, but also her pregnancy, the fact that she gave birth to a child, and conditions related to her pregnancy." As DeBoom, Raining Rose, and the district court only addressed discrimination based on pregnancy, we do so as well.

giving rise to an inference of discrimination." *Smidt v. Porter*, 695 N.W.2d 9, 14 (Iowa 2005). The burden then shifts to the defendant "to offer a legitimate nondiscriminatory reason for the termination." *Id.* at 15. "If the employer offers a legitimate nondiscriminatory reason, the plaintiff must show the employer's reason was pretextual and that unlawful discrimination was the real reason for the termination." *Id.*

Raining Rose asserts DeBoom does not have a valid pregnancy claim because her status as a "new mom" is not part of the protected class of pregnant women. *See Piantanida v. Wyman Ctr., Inc.*, 116 F.3d 340, 342 (8th Cir. 1997) ("[Employee's] claim of discrimination based on [employee's] status as a new parent is not cognizable under the [federal Pregnancy Discrimination Act]."). While we agree the Iowa statute does not recognize a discrimination claim based on DeBoom's status as a new parent, we think there is substantial evidence linking DeBoom's termination to her pregnancy.

Although we have not yet determined whether the prohibition against termination of "a person disabled by pregnancy because of the employee's pregnancy" under Iowa Code section 216.6(2)(*d*) includes a woman who has recently given birth or taken maternity leave, federal courts have interpreted the federal Pregnancy Discrimination Act (PDA) as applying to women who are not pregnant and to women who have taken authorized maternity leave. *See, e.g., Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Johnson Controls, Inc.*, 499 U.S. 187, 206, 111 S. Ct. 1196, 1207, 113 L. Ed. 2d 158, 178 (1991); *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 424 (1st Cir. 1996). When interpreting discrimination claims under Iowa Code chapter 216, we turn to federal law, including Title VII of the United States Civil Rights Act and the Americans with Disabilities Act. *See Bd. of Supervisors v.*

*Iowa Civil Rights Comm'n*, 584 N.W.2d 252, 256 (Iowa 1998) ("In deciding gender discrimination disputes, we adhere to the Title VII analytical framework . . . ."); *Fuller v. Iowa Dep't of Human Servs.*, 576 N.W.2d 324, 329 (Iowa 1998) ("In considering a disability discrimination claim brought under Iowa Code chapter 216, we look to the ADA and cases interpreting its language."). However, we must be mindful not to substitute "the language of the federal statutes for the clear words of the Iowa Civil Rights Act." *Hulme v. Barrett*, 449 N.W.2d 629, 631 (Iowa 1989).

The federal pregnancy discrimination act states:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

42 U.S.C. § 2000e–2(a) (2006). The statute defines "because of sex" as "includ[ing], but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). The United States Supreme Court has interpreted the statute as applying to women who may become pregnant. *Int'l Union,* 499 U.S. at 206, 111 S. Ct. at 1207, 113 L. Ed. 2d at 178 ("We conclude that the language of [the statute], as well as the legislative history and case law, prohibit an employer from discriminating against a woman because of her capacity to become pregnant . . . .").

In line with the federal statute, several circuit courts have determined an adverse employment action motivated by a pregnancy related condition violates the PDA even though the employee was not pregnant at the time of the discriminatory act. *Hall v. Nalco Co.*, 534

F.3d 644, 649 (7th Cir. 2008) (holding infertility is a pregnancy related condition where plaintiff claimed she was terminated because she took time off work to undergo in vitro fertilization); *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008) (holding woman who alleged she was terminated for having an abortion stated a prima facie case for discrimination); *Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 470 (6th Cir. 2005) (holding federal statute covers situation where employer refused to rehire employee because she might become pregnant again); *see also Nelson v. Wittern Group, Inc.*, 140 F. Supp. 2d 1001, 1007 (S.D. Iowa 2001) (holding woman who claimed she was terminated after giving birth because she became pregnant was part of the protected class).

After reviewing interpretations of the federal PDA, we interpret the phrase "a person disabled by pregnancy because of the employee's pregnancy" broadly to include women affected by pregnancy, childbirth, and other related conditions. Iowa Code § 216.6(2)(*d*). Such a broad interpretation is necessary to effectuate the purpose of the statute. *See Int'l Union*, 499 U.S. at 205, 111 S. Ct. at 1206, 113 L. Ed. 2d at 177 (stating legislative history reveals purpose of federal PDA is "to protect female workers from being treated differently from other employees simply because of their capacity to bear children"). However, we do not hold Iowa Code section 216.6(2) prohibits an employer from terminating an employee based on the employee's decision to prioritize family over work. Such a decision can be made by men as well as women and, therefore, is not based on the unique capacity of women to bear children so as to fall within the scope of Iowa's statute. *See Piantanida*, 116 F.3d at 342.

Here, DeBoom was allegedly terminated because she could not catch up fast enough after she returned from maternity leave. DeBoom was terminated seven business days after she returned to Raining Rose full time. Timing alone is not sufficient to demonstrate the employer's reason for terminating the employee was pretextual. *Cf. Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 768 (Iowa 2009) ("We have said that the timing between the protected activity and the discharge is insufficient, by itself, to support the causation element of the tort [of wrongful discharge]."); *see also Groves v. Cost Planning & Mgmt. Int'l, Inc.*, 372 F.3d 1008, 1010 (8th Cir. 2004) ("[T]iming alone does not sufficiently undermine [an employer's legitimate] justifications [for termination] to create a genuine issue of fact on pretext."). However, a trier of fact may find timing to be "particularly suspicious," *Smidt*, 695 N.W.2d at 15, and DeBoom did provide other evidence linking her termination to her pregnancy.

DeBoom presented evidence to support an inference of discrimination and rebut the legitimate nondiscriminatory reason for termination that Raining Rose put forth. First, DeBoom presented evidence of the circumstances of her termination. Raining Rose admitted it made the decision to terminate DeBoom sometime between the day she returned to work part-time and the day she was fired. DeBoom may fairly argue the termination decision was made before any of her alleged performance problems. Additionally, DeBoom provided evidence she was never notified of or disciplined for substandard performance prior to her termination whereas other employees received a warning before termination. *See Smidt*, 695 N.W.2d at 15–16 (holding "a trier of fact could choose not to believe [the employer's] after-the-fact justifications"

where the employer failed to produce documentation of poor performance).

Second, DeBoom presented statements from which a jury could infer animus towards pregnant women. DeBoom testified Christoffersen repeatedly asked her if she would be returning to work after giving birth and asked whether she was "going to be like all those other women who find it's this life-altering experience and decide to stay home." A jury could infer that DeBoom's employer assumed she would return to the company without the same commitment to her work as before and therefore discriminated against her once she returned from maternity leave.

Third, DeBoom asserts Raining Rose created a situation in which she was doomed to fail after she returned from maternity leave. The record indicates after DeBoom returned from her maternity leave, she was working on a multitude of projects that had piled up in her absence along with new assignments. Prior to taking maternity leave, DeBoom typically worked sixty-hour weeks. While she was on maternity leave, Raining Rose hired a temporary replacement to work ten to fifteen hours a week. The replacement did not work on all of the projects assigned to DeBoom, but rather simply handled some items as they came up on a daily basis and focused on one particular project. When DeBoom returned to work part-time two months after giving birth, she was completely overwhelmed with work that had piled up in her absence. She was given a massive list of projects demanding her attention. DeBoom estimated there were forty projects, some of which were new and some of which were ongoing projects DeBoom had worked on before her maternity leave. Additionally, when DeBoom returned to work full time in April, she was assigned the task of spending three days a week

doing door-to-door sales. At the meeting where DeBoom was fired, DeBoom testified Hammond told her "he felt that [she] wasn't catching up fast enough from the maternity leave and that they had begun to doubt whether [she] was still committed to [her] job."

It is a factual question whether Raining Rose terminated DeBoom for permissible reasons such as she was no longer working an acceptable amount of hours or performing as well as she had prior to giving birth (a choice to prioritize family over work) or whether Raining Rose terminated DeBoom for the impermissible reason that she took maternity leave.

DeBoom presented substantial evidence that her pregnancy and maternity leave were a motivating factor[4] in her termination. As "reasonable minds could differ on [the] issue" of whether DeBoom was terminated because of her pregnancy, the district court rightly determined the case should go to a jury. *Stover*, 434 N.W.2d at 873.

**B. Pretext.** DeBoom complains the district court erred by refusing to instruct the jury on "pretext." A pretext instruction states a jury may infer intentional discrimination if it disbelieves the employer's asserted reasons for terminating the employee. The district court denied DeBoom's request for the following jury instruction:

> You may find that plaintiff's sex was a motivating factor in defendant's decision to terminate if it has been proved by the preponderance of the evidence that defendant's stated reasons for its decision are not the real reason, but are a pretext to hide sex discrimination.

DeBoom's requested pretext instruction is a correct statement of law. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105, 117 (2000) (stating "the

---

[4]As discussed infra, the term "a motivating factor" is preferable to "a determining factor" in order to eliminate confusion between tortious discharge and discrimination claims.

plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence' " (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095, 67 L. Ed. 207, 217 (1981))); *Smidt*, 695 N.W.2d at 16 (stating "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose" (quoting *Reeves*, 530 U.S. at 147, 120 S. Ct. at 2108, 147 L. Ed. 2d at 120)). DeBoom relies on several federal circuit court opinions that require a pretext instruction be given when requested in a discrimination case. *See Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1241 (10th Cir. 2002); *Ratliff v. City of Gainesville*, 256 F.3d 355, 360 (5th Cir. 2001); *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 280 (3d Cir. 1998); *Cabrera v. Jakabovitz*, 24 F.3d 372, 382 (2d Cir. 1994). Because the Iowa Civil Rights Act was modeled after Title VII of the United States Civil Rights Act, we turn to federal law for guidance in evaluating the Iowa Civil Rights Act. *Vivian v. Madison*, 601 N.W.2d 872, 873 (Iowa 1999). The cases upon which DeBoom relies have all held a pretext instruction is required in order to ensure the jury understands the plaintiff need not present an admission or other affirmative evidence of the defendant's intent in order to prove discrimination.

Raining Rose counters there are several circuit courts which have held a pretext instruction is permissible but not required. *See Conroy v. Abraham Chevrolet-Tampa, Inc.*, 375 F.3d 1228, 1233–34 (11th Cir. 2004); *Gehring v. Case Corp.*, 43 F.3d 340, 343 (7th Cir. 1994); *see also Moore v. Robertson Fire Prot. Dist.*, 249 F.3d 786, 790 n.9 (8th Cir. 2001) (expressing doubt it would ever be reversible error for failure to give pretext instruction); *Fite v. Digital Equip. Corp.*, 232 F.3d 3, 7 (1st Cir.

2000) (same). Some courts have held a general credibility instruction (which the district court provided here) is sufficient. *See, e.g.*, *Conroy*, 375 F.3d at 1235. Moreover, Raining Rose asserts DeBoom was free to argue in her closing argument to the jury that its stated reasons for terminating her were merely pretextual and an effort to hide its alleged discriminatory motive.

We find the courts requiring a pretext instruction more convincing. A pretext instruction is necessary because discrimination cases are difficult to prove. The Supreme Court has acknowledged the issue before the fact finder in a discrimination case " 'is both sensitive and difficult,' and 'that [t]here will seldom be "eyewitness" testimony as to the employer's mental processes.' " *Reeves*, 530 U.S. at 141, 120 S. Ct. at 2105, 147 L. Ed. 2d at 116 (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S. Ct. 1478, 1482, 75 L. Ed. 2d 403, 411 (1983)); *see also La Montagne v. Am. Convenience Prods., Inc.*, 750 F.2d 1405, 1410 (7th Cir. 1984) (stating "an employer who knowingly discriminates . . . may leave no written records revealing the forbidden motive and may communicate it orally to no one"). Without such an instruction, a jury may well assume it cannot find in the plaintiff's favor without direct evidence of discrimination. *Townsend*, 294 F.3d at 1241. Thus, we hold a pretext instruction "is required where, as here, a rational finder of fact could reasonably find the defendant's explanation false and could 'infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.' " *Id.* (quoting *Reeves*, 530 U.S. at 147, 120 S. Ct. at 2108, 147 L. Ed. 2d at 120).

Raining Rose argues even if a pretext instruction should have been given, DeBoom was not prejudiced because she failed to present substantial evidence to support her claims for either sex or pregnancy

discrimination. *See Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 577–78 (5th Cir. 2004) (holding refusal to give pretext instruction was error but not prejudicial). However, once the defendant offers legitimate non-discriminatory reasons for terminating the plaintiff, the burden shifts to the plaintiff to demonstrate the employer's reasons were pretextual. *Smidt*, 695 N.W.2d at 14–15. If a plaintiff then presents evidence of pretext, failure to provide a pretext instruction will result in prejudice. *See Townsend*, 294 F.3d at 1242–43. Here, as discussed above, DeBoom presented sufficient evidence of pretext to reach the jury. Because our case law shifts the burden to the plaintiff to demonstrate pretext, and because DeBoom presented substantial evidence of pretext, she was entitled to a jury instruction on pretext. Refusal to instruct the jury on pretext prejudiced DeBoom.

**C. Inconsistent Statements.** DeBoom also argues the district court should have given her proposed instructions on inconsistent statements by a non-party and a party opponent. Both DeBoom and Raining Rose requested the same instructions on inconsistent statements,[5] yet the district court refused to give such instructions, instead only instructing the jury on the credibility of witnesses.[6] As DeBoom's request for instructions on inconsistent statements was legitimate considering the facts and circumstances of this case, the district court should have instructed the jury on inconsistent statements. *See Vaughan*, 542 N.W.2d at 539 ("As long as a requested instruction

[5]Both DeBoom and Raining Rose requested Iowa Civil Jury Instructions 100.13, Contradictory Statement – Non-Party – Witness Not Under Oath; 100.14, Contradictory Statements, Non-Party, Witness Under Oath; and 100.15, Statements By A Party Opponent. At trial, the judge asked whether Raining Rose thought the proposed instructions were necessary, and Raining Rose said it did not care either way.

[6]Instruction 6 is based on Iowa Civil Jury Instruction 100.9, Credibility Of Witnesses.

correctly states the law, has application to the case, and is not stated elsewhere in the instructions, the court must give the requested instruction."). As we are reversing for other reasons, we need not determine whether the district court's error would require reversal.

**D. Marshalling Instruction.** DeBoom contends the trial court improperly instructed the jury. DeBoom argues the district court should have used the Eighth Circuit Model Civil Jury Instruction 5.01[7] to set out the elements of her cause of action instead of modifying Iowa Civil Jury Instruction 3100.1, Tortious Discharge Against Public Policy - Essentials for Recovery. DeBoom contends modifying the instruction for tortious discharge against public policy instead of borrowing the Eighth Circuit's sex discrimination instructions improperly added several elements to her burden of proof. The district court submitted the following jury instruction:

> To prove discrimination based on her sex and her pregnancy, Plaintiff Elizabeth DeBoom must prove all of the following propositions:
>
> 1. Plaintiff Elizabeth DeBoom was an employee of Raining Rose, Inc. . . . .

---

[7]DeBoom's requested instruction based on Eighth Circuit Model Civil Jury Instruction 5.01 stated:

> To prove sex discrimination, Plaintiff must prove all of the following elements:
>
> 1. Defendants discharged Plaintiff; and
>
> 2. Plaintiff's sex was a motivating factor in their actions.
>
> If either of the above elements has not been proved by the preponderance of the evidence, your verdict must be for defendant and you need not proceed further in considering this claim. You may find that plaintiff's sex was a motivating factor in defendant's decision if it has been proved by the preponderance of the evidence that defendants' stated reasons for its decision are a pretext to hide sex discrimination.

2.     Defendants Raining Rose, Inc. . . . discharged Plaintiff Elizabeth DeBoom from employment.

3.     Plaintiff Elizabeth DeBoom's sex and pregnancy was a determining factor in Defendant[] Raining Rose, Inc.['s] . . . decision to discharge Plaintiff Elizabeth DeBoom.

4.   The discharge was a proximate cause of damage to Plaintiff Elizabeth DeBoom.

5.   The nature and extent of the damage.

If the Plaintiff has failed to prove any of these propositions, the Plaintiff is not entitled to damages. If the Plaintiff has proved all of these propositions, the Plaintiff is entitled to damages in some amount.

1. *Damages.* DeBoom argues this instruction was an improper statement of the law because it added elements to a discrimination claim that neither the Iowa Civil Rights Act nor case law require. Specifically, she objects to having the burden to prove damages and proximate cause. In her petition, DeBoom sought monetary damages, including attorneys' fees, as well as "other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act."

If the only relief sought by DeBoom was the recovery of monetary damages, the court's marshalling instruction may have been appropriate. However, in the context of the equitable relief, the court's instruction added unnecessary elements to DeBoom's cause of action. In the panoply of relief sought here, the marshalling instruction did not serve these ends well. If discrimination is proven, the district court may grant any relief authorized by Iowa Code sections 216.15(8), including granting an injunction; ordering the rehiring, reinstatement or upgrading of an employee; and awarding damages caused by the discrimination. Iowa Code § 216.16(5). "[D]amages shall include but are not limited to actual damages, court costs and reasonable attorney fees." *Id.* § 216.15(8)(*a*)(8); *see Greenland v. Fairtron Corp.,* 500 N.W.2d 36, 39 n.6 (Iowa 1993)

(stating employee claiming sex discrimination may recover emotional distress damages without a showing of outrageous conduct). The jury should have been instructed to consider damages only in the event DeBoom proved her sex or pregnancy was a motivating factor in Raining Rose's decision to terminate her employment. Creating separate instructions for discrimination and damages allows a plaintiff to seek equitable relief and attorney fees in the event the jury found she was discriminated against but failed to prove actual damages.

2. *Motivating factor v. determining factor.* The main difference between the jury instruction provided by the court (a modified version of the tortious discharge against public policy instruction) and the Eighth Circuit's model instruction is that the plaintiff must prove her sex or pregnancy was a *determining* factor, rather than a *motivating* factor, in her discharge. Although DeBoom concedes the substitution of "determining" for "motivating" alone would not, in itself, have been error, she argues the definition of "determining factor" in Instruction 15 increased her burden of proof.

In the jury instructions, the district court defined "determining factor" two different ways. In Instruction 14, "Plaintiff's pregnancy was a 'determining factor' if that factor *played a part* in the Defendant's later actions towards Plaintiff. However, Plaintiff's pregnancy need not have been the only reason for Defendant's actions." (Emphasis added.) This instruction was derived from the Eighth Circuit's Model Civil Instruction 5.96,[8] the only difference being the substitution of the word

---

[8]DeBoom's requested instruction based on Eighth Circuit Model Civil Instruction 5.96 stated:

> Definition of Motivating Factor. As used in these Instructions, Plaintiff's pregnancy was a "motivating factor" if that factor played a part in the Defendant's later actions toward Plaintiff. However, Plaintiff's pregnancy need not have been the only reason for Defendant's actions.

"determining" for "motivating." The subsequent instruction, number 15, reads: "A determining factor need not be the main reason behind the decision. It need only be the reason which *tips the scales decisively* one way or the other." (Emphasis added.) This instruction is taken from Iowa Civil Jury Instruction 3100.3, Tortious Discharge Against Public Policy - Determining Factor.

The definition in Instruction 15 not only conflicts with Instruction 14, which likely confused the jury, but also imposes on DeBoom a higher burden of proof than is required in discrimination cases. A factor that "played a part" is quantitatively different from a factor that "tips the scales decisively one way or the other." Proving her pregnancy was a factor that tipped the scales requires a much higher burden of proof than proving her pregnancy was a factor that played a part in her termination.

This higher burden is not required by either the Iowa Civil Rights Act or case law. Iowa Code § 216.6(1)(*a*), (2)(*d*); *Smidt*, 695 N.W.2d at 14. Instruction No. 15, defining "determining factor" as "tips the scales decisively," is based on Iowa Civil Jury Instruction 3100.3 and tortious discharge case law. *See Teachout v. Forest City Cmty. Sch. Dist.*, 584 N.W.2d 296, 301–02 (Iowa 1998). In *Teachout*, we stated "[a] factor is determinative if it is the reason that 'tips the scales decisively one way or the other,' even if it is not the predominant reason behind the employer's decision." *Id.* at 302 (quoting *Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 686 (Iowa 1990)).

In tortious discharge cases, the causation standard is higher than in discrimination cases. *Id.* at 301. "The employee's engagement in protected conduct must be *the* determinative factor in the employer's decision to take adverse action against the employee." *Id.* (emphasis added). Conversely, in discrimination cases, the plaintiff need only

demonstrate "termination occurred under circumstances giving rise to an inference of discrimination" and his or her status as a member of a protected class was *a* determining factor in the decision to terminate employment. *Smidt,* 695 N.W.2d at 14–16; *Sievers v. Iowa Mut. Ins. Co.,* 581 N.W.2d 633, 639 (Iowa 1998); *Vaughan,* 542 N.W.2d at 538. Instruction 14 best corresponds with the burden of proof required in discrimination cases, whereas Instruction 15 accurately states the burden in tortious-discharge-against-public-policy cases. Not only does Instruction 15 misstate DeBoom's burden of proof, but it is likely that using both of these instructions confused the jury as to what DeBoom was required to demonstrate. Therefore, we remand for a new trial. *See Anderson,* 620 N.W.2d at 268.

The district court should have used DeBoom's proffered instructions, which were based on the Eighth Circuit's Model Civil Jury Instructions. Although the district court could tweak the definition of "a determining factor," it would be easier to use the word "motivating" instead of "determining" in discrimination cases. Rather than have competing definitions of substantially the same word (*a* determining factor v. *the* determining factor) in similar areas of the law (discrimination and tortious discharge), adopting the word "motivating" in discrimination cases would eliminate the confusion between the differing burdens of proof in these types of cases.

**IV.    Conclusion.**

We find DeBoom was prejudiced by the jury instructions. Therefore, she is entitled to a new trial.

**REVERSED AND REMANDED WITH DIRECTIONS.**

All justices concur except Baker, J., who takes no part.