**IN THE COURT OF APPEALS OF IOWA**

No. 14-0140
Filed December 24, 2014

**TAMMY MARIE ROCHE,**
        Plaintiff-Appellant,

**vs.**

**DAVENPORT CLEANERS, INC., MARK
DAVENPORT, and SUE DAVENPORT,**
        Defendant-Appellees.
_____

        Appeal from the Iowa District Court for Woodbury County, Jeffrey L.

Poulson, Judge.


        Following a bench trial, Tammy Roche appeals the district court's denial of

her claims she was subjected to a sexually hostile work environment, and that

she was terminated in retaliation for reporting this harassment, in violation of the

Iowa Civil Rights Act.  **AFFIRMED.**


        Jay E. Denne of Munger, Reinschmidt & Denne L.L.P., Sioux City, for

appellant.

        Angie J. Schneiderman of Berenstein, Moore, Heffernan, Moeller

& Johnson, L.L.P., Sioux City, for appellees.


        Heard by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**VOGEL, P.J.**

Following a bench trial, Tammy Roche appeals the district court's denial of her claims she was subjected to a sexually hostile work environment and that she was discharged in retaliation for her protected activity of reporting the harassment, in violation of the Iowa Civil Rights Act (ICRA). Davenport Cleaners argues the district court properly found that, because Roche also engaged in name-calling and arguing, the harassment was not "unwelcome." It further asserts the court was correct in its conclusion the harassment was not based on a protected characteristic, given Roche was previously engaged in a relationship with her harasser. Finally, it claims the district court properly found the reason proffered for Roche's termination was nondiscriminatory.

We conclude substantial evidence supports the district court's conclusion the harassment was not unwelcome because Roche invited and reciprocated the conduct of which she complains. We also agree substantial evidence supports the district court's conclusion that the harassment was not based on a protected characteristic but the result of Roche's failed romantic relationship with the harasser. We, therefore, like the district court, do not need to address whether Davenport Cleaners made reasonable efforts to ameliorate the alleged hostile work environment because Roche failed to prove two of the four elements of a hostile-work-environment claim. Additionally, because a nondiscriminatory reason existed for Roche's termination, and Roche failed to meet her burden showing this reason was pretextual, we affirm the district court's denial of her retaliation claim. We therefore affirm the decision of the district court.

**I. Factual and Procedural Background**

Roche began working for Davenport Cleaners in Sioux City, Iowa, in 1995. Mark and Sue Davenport were the proprietors, and the business employed approximately fifteen to twenty people. Roche was primarily involved in pressing pants, and after taking time off work due to an injury and a pregnancy, Roche returned to work full time in 2000. Until her termination, Roche received no disciplinary reports and was never reprimanded. She stated she loved her job and felt like the Davenports and her coworkers were family.

John Vlahoulis began working at Davenport Cleaners in 1997 or 1998. Roche and Vlahoulis began dating on February 11, 2005. They dated steadily for approximately two years but then had an "on again, off again" relationship for approximately six months. They officially ended the relationship in September 2007.

Prior to dating Roche, Vlahoulis was in a relationship with Melinda Hesse—another Davenport Cleaners employee. They dated from 2001 until 2003. Hesse testified at trial, and it was undisputed, Roche and Hesse did not have a very civil relationship. There were several instances of altercations between the two, which included name-calling on both their parts. Roche admitted to calling Hesse female derogatory names, and Sue Davenport testified Roche had complained to her Hesse had keyed her car. Hesse stated she and Vlahoulis were and are currently friends and that, during the course of Roche's employment, she saw Roche shove Vlahoulis.

Roche testified Vlahoulis began verbally harassing her once their relationship became more sporadic, and then the harassment became constant

in the workplace once the relationship officially ended. She stated that when Vlahoulis ended the relationship he would not engage in harassment, but if she ended it he would, almost constantly, call her extremely derogatory names. His occasional use of such name calling was not disputed. There was also an instance when Vlahoulis stated Roche gave him STDs, a statement for which he was sent home for the day.

Roche further testified some of this harassment was physical, such as one instance when Vlahoulis pushed her by putting his elbow on her back and another when he threw ice at her. Hesse testified she witnessed Roche push Vlahoulis into some carts. However, the existence of the physical altercations was not corroborated, and the district court concluded the accusations made by both parties regarding the physical harassment were exaggerated and likely untruthful in some form. Additionally, it was established Roche argued back with Vlahoulis and would call him male-derogatory names. Coworkers recalled Roche and Vlahoulis would enter each other's work areas for no legitimate reason and testified "they both did it."

On February 18, 2008, Vlahoulis stated he heard that Roche had hit Hesse's child at the mall. Roche went back to her work area, and Vlahoulis followed, stating: "Did I hit a nerve?" Roche struck Vlahoulis in the forehead with an open-faced palm, which did not result in an injury. Vlahoulis then slapped Roche, which resulted in a red mark on her neck. Sue ordered Roche to go home because "she hit first." The next day, after Sue consulted with an attorney, Roche was terminated as she had "created a hostile work environment" with the first blow. During the phone call, Sue asked why Roche had "let him get to her."

The video of the incident, admitted at trial, shows Vlahoulis following Roche into her work space with nothing in his hands and waving his arms. He is approximately two feet away from Roche. Roche then pushes him in the forehead with an open palm, and Vlahoulis responds by shoving her, with his hands hitting her neck. There is no audio.

Both Mark and Sue testified. In his testimony, Mark admitted to being aware of Vlahoulis's verbal comments to Roche and that Roche complained directly to him of this behavior and her discomfort with it. He stated he was the one who sent Vlahoulis home after Vlahoulis complained, within hearing of other employees, that Roche gave him STDs.

Sue also testified she was aware of the tension between Vlahoulis and Roche. She stated that, when she would see the two of them arguing, she would tell them to "knock it off" and send them to their respective work stations. She stated she verbally reprimanded Vlahoulis many times over the course of two years. Mark and Sue characterized Vlahoulis's behavior towards Roche as an ongoing situation, but one they could not consistently address because the relationship was "on again, off again." Sue stated that when Roche complained of the behavior, Roche would say she did not want to get Vlahoulis in trouble. Mark testified Roche would tell him they were back together and "everything's okay now." The Davenports did not want the two to bring their personal problems into work, but when they were back together, "everything was fine."

Vlahoulis testified as well. He admitted he pleaded guilty to the crime of harassing Roche following an incident in a Walmart parking lot, which occurred

after Roche's termination.[1]  When asked if he did in fact call Roche various derogatory names, he stated it "was very possible," but it was due to Roche "pushing his buttons," and that she engaged in the same type of behavior. Roche also became very close to Vlahoulis's mother during the volatile relationship.  However, when the couple would have problems, Roche would go to Vlahouis's mother's house, upsetting her and bringing her to tears.  The following exchange also occurred during cross-examination:

> Q: Did you tell the civil rights investigator that how is a Greek man that is in love with a woman supposed to react?  A: Yes, I did.
> Q: What did you mean by that?  A: Well, you know, there was a time when I loved Tammy.  There was a time when I had considered asking Tammy to marry me.  There was a time that Tammy and I had made plans to go to Greece and have a wedding.
> Q: So you feel scorned by her; is that right?  A: I feel scorned.

Various other witnesses who were either current or former employees testified as part of Roche's case-in-chief.  Eva Schrunk and Dorothy Swanson stated they heard arguments occur between Roche and Vlahoulis but they did not give any specifics as to what was said.  Janell Siljenberg testified in a similar manner, in which the following exchange occurred:

> Q: Did you personally observe anything or [are the problems] something you just heard about secondhand?  A: I didn't see too much.  I'd hear, you know—one of them would go by—you know, they would go by each other and have something to say, but I never heard exactly what they said, but, you know, something negative to each other.  Go back and forth.

---

[1] The events of that day were somewhat disputed at trial.  Roche stated Vlahoulis began yelling at her once he saw her talking to his brother in the Walmart parking lot, and then, after she walked over to another man, he "started accusing that guy of sleeping with me."  Vlahoulis testified: "I was trying to protect my family after being—after telling Tammy many times to stay away."  Nothing from the criminal conviction was entered into evidence.

Q: It's your testimony at this point you don't recall what they said?  A: No.  I don't recall that.

Wendy Thompson, another coworker, testified she never saw inappropriate behavior occurring between the two.  She also stated that subsequent to her termination Roche continued to send her text messages.  Specifically:

Q: So Ms. Roche would ask you to listen for particular songs on the radio after she was terminated?  A: Yes.
Q: And would she ask you to watch for anyone's reaction? A: Yes.
Q: And whose reaction?  A: John's.
Q: And do you know why she was asking you to do that? A: Because it would make him mad.

Katie Kamerzell, Roche's friend and neighbor, testified that while Roche was working at Davenport Cleaners she would frequently appear distraught. When Kamerzell inquired about what was wrong, Roche indicated she was upset because Vlahoulis was making "sexual slurs, sexual innuendos about her conduct that was just degrading and humiliating."  She further stated Roche was emotionally devastated following her termination.

The transcript of Roche's hearing for unemployment benefits was entered into evidence.  According to the transcript, Sue stated Thompson told her that Roche "should not be talked to like that."  However, Thompson denied making that statement at trial, and Sue testified she could not specifically remember Thompson making that statement but that it was possible.  The final unemployment decision was not entered into evidence, but testimony established benefits were granted to Roche following the hearing and were later denied on appeal.

On November 1, 2011, Roche filed a petition alleging a violation of her rights under the ICRA, as set forth in Iowa Code chapter 216 (2011). She asserted she was subjected to a hostile work environment and was discharged in retaliation for engaging in a protected activity, that is, telling Mark and Sue about the harassment.[2] A bench trial was held on October 29 and 30, 2013. The district court entered its ruling on December 24, 2013, denying Roche's claims, finding she had not met her burden of proof on either her sexually-hostile-work-environment claim or her retaliation claim. Roche appeals.

## II. Standard of Review

Our review of claims tried to the district court under the ICRA is for correction of errors at law. *Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 230 (Iowa 1995) ("Our review of discrimination claims tried to the court is at law."). The district court's findings of fact are entitled to the weight of a special verdict and are binding on appeal if supported by substantial evidence. *Lynch v. City of Des Moines*, 454 N.W.2d 827, 829 (Iowa 1990). If there is no substantial evidence to support a finding upon which the lower court arrives at a challenged conclusion of law, the finding is not binding on this court. *Offermann v. Dickinson*, 175 N.W.2d 423, 426 (Iowa 1970).

## III. Sexually Hostile Work Environment

Roche first argues the district court erred in finding she did not meet her burden of proof with regard to her claim she was subject to a sexually hostile work environment. She asserts the harassment by Vlahoulis, due to its

---

[2] The petition also alleged she was discriminated against based on her gender. However, that claim was not pursued at trial, and the district court in its opinion dismissed the claim. The argument was not pursued on appeal.

pervasiveness and the extreme derogatory nature of the insults, was in fact unwelcome, and even though she occasionally engaged in name-calling and arguing, this did not mean she participated in the conduct of which she complained. She further claims the court improperly concluded that, just because she was previously in a relationship with Vlahoulis, this harassment was not based on a protected characteristic, that is, the fact she is female.

To establish a hostile-work-environment claim under the ICRA, the plaintiff must show that:

> (1) he or she belongs to a protected group; (2) he or she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; and (4) the harassment affected a term, condition, or privilege of employment. Additionally, if the harassment is perpetrated by a nonsupervisory employee, the plaintiff must show the employer knew or should have known of the harassment and failed to take proper remedial action.

*Boyle v. Alum-Line, Inc.*, 710 N.W.2d 741, 746 (Iowa 2006) (quoting *Farmland Foods v. Dubuque Human Rights Comm'n*, 672 N.W.2d 733, 744 (Iowa 2003)). Because the ICRA is based on Title VII, we also look to the federal courts for guidance with respect to the interpretation of whether the plaintiff met her burden of proof. *DeBoom v. Raining Rose, Inc.*, 772 N.W.2d 1, 7 (Iowa 2009).

It is undisputed Roche belongs to a protected class due to the fact she is female. Consequently, we will proceed to discuss the merits of the other elements.

**A. Unwelcome Conduct**

The district court concluded Roche failed to meet her burden of proof on this element because she reciprocated and even initiated the harassment with Vlahoulis. We conclude substantial evidence supports this finding. "A plaintiff

cannot create a genuine issue of material fact with regard to unwelcome behavior when she engages in the conduct complained about." *Hoevar v. Purdue Frederick Co.*, 223 F.3d 721, 736 (8th Cir. 2000). In *Hoevar*, the plaintiff complained of behavior in which her supervisor used derogatory words, but the plaintiff admitted to also using the same words "around the supervisor and other employees." *Id.* at 736–37. The court then found "that these actions on the part of Hoevar vitiate her contention that the mere use of these words was unwelcome." *Id.*

In this case, the district court stated it found credible the fact Roche "either responded to or initiated arguments with her own vulgar language directed towards Mr. Vlahoulis and Ms. Hesse." It further concluded "the harassment was reciprocated and initiated by Plaintiff because of the failed personal relationship between her and Mr. Vlahoulis." In addition, two coworkers whom the court found very credible, testified both Roche and Vlahousis would enter each other's work area, for no work-related purpose. "[T]he conduct at issue must be 'unwelcome' in that the plaintiff neither solicited it nor invited it and regarded the conduct as undesirable or offensive." *Scua v. Nestle U.S.A. Co.*, 181 F.3d 958, 966 (8th Cir. 1999) (citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 68 (1986)). While the district court stated it believed Roche subjectively considered the harassment offensive, the court could not find Roche proved it was "unwelcome" because Roche solicited or invited the behavior. We find the district court's conclusion that Roche failed to meet her burden of proving this element of her hostile-work-environment claim is supported by substantial evidence. *See Lynch*, 454 N.W.2d at 834 (noting the conduct "must be unwelcome in the sense

that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive," citing *Henson v. City of Dundee*, 682 F.2d 897, 903 (11th Cir. 1982)).

### B. Discrimination Based on a Protected Characteristic

Roche next argues the district court erred in finding the harassment was not based on her sex due to the fact Roche and Vlahoulis were previously in a relationship. She asserts Vlahoulis's use of the insulting, gender-specific, and overtly sexual terms clearly indicates the harassment was based on her status as a female. She further claims that to hold a former lover only harassed her because of the previous relationship would essentially give carte blanche to any former paramour who began harassing a plaintiff in the work place. This, she asserts, is poor public policy.

In concluding Roche did not meet her burden showing the discrimination was based on sex, the district court stated:

> Plaintiff's own testimony established the harassment by Mr. Vlahoulis only occurred after the two ended any current relationship. Plaintiff testified Mr. Vlahoulis would never say any offensive or vulgar language to her when they were in a relationship; it was not until one of the two ended their romantic relationship that the harassment would commence again. This cause-and-effect relationship suggests to the Court the basis for the harassment: Mr. Vlahoulis would be upset about his ending relationship and would take it out on his former paramour. Furthermore, multiple witnesses testified to the fact that Mr. Vlahoulis got along with his other former girlfriend, Ms. Hesse, even after the two ended their relationship and he began dating Plaintiff. Additionally, Defendants never received any complaints about Mr. Vlahoulis' behavior toward other females in the workplace, and no evidence exists to suggest Mr. Vlahoulis was anything but cordial to the remaining twelve female co-workers employed at the time. The simple use of the word "b*tch" and other gender-specific vulgarities "is not an indication of a general misogynist attitude. Rather it is a crude, gender-specific vulgarity, which in this case was directed

toward only one woman, rather than women in general." *Kriss v. Sprint Commc'ns Co.*, 58 F.3d 1276, 1281 (8th Cir. 1995).

While it is true some of the words used by Vlahouis have female connotations, the words were spoken to Roche not because of her sex but as a result of the ending of the relationship between Roche and Vlahoulis. Roche used female derogatory terms against Hesse. *See Canady v. John Morrell, Co.*, 247 F. Supp. 2d 1107, 1118 (N.D. Iowa 2003) (finding the term "b*tch" was used by both men and women and in the context of the case did not convey a gender-based animus); *see also Kriss*, 58 F.3d at 1281 (holding the use of the term "b*tch," even though it is a gender-based insult, without more does not serve to establish the plaintiff would not have been harassed but for her sex); *but see Burns v. McGregor Elec. Indus.*, 989 F.2d 959, 964–65 (8th Cir. 1993) (reversing district court's grant of summary judgment and holding terms such as "b*tch," "sl*t," and "c*nt" directed to female employee amounted to harassment based on her sex).

We are bound by the trial court's findings of fact if those findings are supported by substantial evidence. *Falczynski*, 533 N.W.2d at 230. Because we must consider the evidence in the light most favorable to upholding the district court's judgment and because a reasonable mind would accept the evidence offered as adequate to reach the same conclusion as the district court, we must affirm the district court's decision.[3] *Id.* Because substantial evidence supports the district court's conclusion that Roche failed to prove two of the four

---

[3] Roche has a difficult burden to carry in this case as we only interfere with a district court's judgment following a bench trial if the evidence is "so overwhelming that only one reasonable inference on each critical fact issue can be drawn" such as would entitled Roche to judgment as a matter of law. *See Falczynski*, 533 N.W.2d at 230.

requirement elements, it correctly denied her hostile-work-environment claim. There is, as a result, no need to address whether the employer knew or should have known of the harassment or analyze whether proper remedial action was taken.

**IV. Retaliation Claim**

Roche's final argument asserts the district court improperly concluded her retaliation claim had no merit. She claims the reason given for her termination—that she "hit first" and had created a "hostile work environment"—was pretextual. Rather, she claims she was fired for engaging in the protected activity of attempting to get Davenport Cleaners to end the harassment and therefore asserts she met her burden with regard to this claim.

To establish a prima facie case of retaliation under the ICRA, a plaintiff must show: (1) he or she was engaged in statutorily protected activity; (2) the employer took adverse employment action against him or her; and (3) there was a causal connection between his or her participation in the protected activity and the adverse employment action taken. *Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 678 (Iowa 2004). When a prima facie case is established, the burden then shifts to the employer to establish a nonretaliatory reason for the adverse employment decision. *Id.* If the employer is able to carry this burden, that is, if it is able to offer a nondiscriminatory reason for the termination, the burden then shifts to the plaintiff to show the reason was pretextual. *Deboom*, 772 N.W.2d at 11.

We agree with the district court Roche established a prima facie case of retaliation under the ICRA.[4] The burden then shifts to the employer to show a nondiscriminatory reason for the termination. *See id.* "This is a burden of production, not persuasion, and no credibility assessment is involved." *Smidt v. Porter*, 695 N.W.2d 9, 15 (Iowa 2005). The Davenports' proffered reason for the termination is that Roche hit first, and they were concerned she had created a hostile work environment. This is "a legitimate nondiscriminatory reason," and the burden then shifts to Roche to show "that unlawful discrimination was the real reason for the termination." *See id.*

We agree with the district court Roche was unable to carry her burden to show she was terminated for engaging in the protected activity of reporting the harassment. It was established through testimony that the policy of the work place was to fire employees who engaged in violent behavior. Even though Vlahoulis was not terminated after engaging in arguably even more violent behavior towards Roche, this was nonetheless a nondiscriminatory reason for Roche's termination. As the district court noted, unwise, unfair, and ill-advised adverse employment actions do not suffice to establish a retaliation claim under the ICRA. *See Nelson v. James H. Knight DDS, P.C.*, 834 N.W.2d 64, 71–72

---

[4] We note the district court stated the discrimination had to be "the determining" factor in the adverse employment decision. This is an incorrect statement of law—rather, "the plaintiff need only demonstrate termination occurred under circumstances giving rise to an inference of discrimination and his or her status as a member of a protected class was *a* determining factor in the decision to terminate employment." *Deboom*, 772 N.W.2d at 13 (internal citation omitted). However, this standard is employed when determining whether the plaintiff has established a prima facie case of discrimination. *Id.* Here, the court properly concluded Roche met her burden showing a prima facie case, and therefore, its misstatement of law is not reversible error.

(Iowa 2013). Consequently, substantial evidence supports the district court's conclusion, and we affirm its denial of Roche's retaliation claim.

**V. Conclusion**

Having considered Roche's arguments, we conclude the district court's decision, finding Vlahoulis's conduct was not unwelcome and finding the harassment was not based on a protected characteristic, is supported by substantial evidence. Additionally, because a nondiscriminatory excuse existed for Roche's termination, and Roche did not meet her burden to show this reason was pretextual, we affirm the district court's denial of Roche's retaliation claim.

**AFFIRMED.**

Potterfield, J., concurs; Vaitheswaran, J., concurs in part and dissents in part.

**VAITHESWARAN, J. (concurring in part and dissenting in part)**

I concur in part and dissent in part. I agree with the majority's disposition of the retaliation claim but I would reverse the hostile work environment claim. First, I cannot find substantial evidence to support the district court's determination that Roche welcomed the more than occasional sexually-charged comments by Vlahoulis. While she certainly "gave as much as she got,"[5] Mark Davenport admitted Roche complained about Vlahoulis's language. He conceded Vlahoulis called Roche a whore, among other things, and agreed it was never permissible for a man in a workplace to call a woman a whore.

I also discern insubstantial evidence to support the district court's finding that "the harassment directed at Plaintiff was not based on her gender." Vlahoulis used highly pejorative sexual language when speaking to and about Roche. As in *Lynch*, the insulting comments "were particularly reserved for women." *Lynch v. City of Des Moines*, 454 N.W.2d 827, 834 (Iowa 1990). Roche's prior romantic relationship with Vlahoulis did not change this fact. As the Iowa Supreme Court stated in *Lynch*, the plaintiff "would not have been subjected to such pervasive harassment but for the fact that she is a woman." *Id.* In my view, the same holds true for Roche.

I also believe the third element—whether the harassment affected a term, condition or privilege of employment—is satisfied. Again, I look to *Lynch*, where the court found the "work environment was so polluted by sexual harassment that it affected [Lynch's] psychological and emotional well-being." *Id.* at 835. The

---

[5] *See Lynch v. City of Des Moines*, 454 N.W.2d 827, 834 (Iowa 1990) (affirming finding of unwelcome harassment even though Lynch "sometimes gave as much as she got.")

district court found "Vlahoulis's behavior towards Plaintiff was sufficiently pervasive, because according to Plaintiff's testimony he directed vulgar profanities and statements to her at least once a week if not every other day." I believe this finding is supported by substantial evidence.

Finally, Mark Davenport's testimony confirms the employer knew of the harassment and took action on only one occasion—when he sent Vlahoulis home for the day after he made a particularly incendiary comment. The Davenports did not otherwise address the pervasive use of sexually-charged language directed at Roche.

For these reasons, I would reverse the district court's ruling on Roche's hostile work environment claim.