APPEL, Justice
(concurring specially).
I concur in the majority opinion but write separately to emphasize four points.
First, the Iowa legislature has directed us to broadly construe the Iowa Civil Rights Act to accomplish its remedial purposes. Iowa Code § 216.18(1) (2015). The majority opinion is consistent with that legislative direction.
Second, the Iowa Civil Rights Act has fundamental differences from the Federal Civil Rights Act. The structure is different, the legislative history is different, and in many places the Iowa statute utilizes different statutory language than federal law. See Goodpaster v. Schwan’s Home Serv., Inc., 849 N.W.2d 1, 9-10 (Iowa 2014); accord DeBoom v. Raining Rose, Inc., 772 N.W.2d 1, 7 (Iowa 2009) (“[W]e must be mindful not to substitute ‘the language of the federal statutes for the clear words of the Iowa Civil Rights Act.’ ” (quoting Hulme v. Barrett, 449 N.W.2d 629, 631 (Iowa 1989)). These distinctive features are among the factors which must be taken into account in evaluating whether federal authority should be considered persuasive in the interpretation of state law.
Third, as the majority clearly demonstrates, the Iowa legislature adopted a traditional fact-based numerosity analysis by using the term-of-art “regularly employed” rather than the more formulaic approach embraced in federal law. While the federal approach is said to provide a “bright line,” a cursory review of the federal caselaw struggling with application of the federal numerosity requirement provides a serious challenge to that assumption. See generally David C. Butow, Note, Counting Your *475 Employees for Purposes of Title VII: It’s Not as Easy as One, Two, Three, 58 Wash. & Lee L. Rev. 1103 (1996); Jacqueline Louise Williams, Note, The Flimsy Yardstick: How Many Employees Does it Take to Defeat a Title VII Discrimination Claim?, 18 Cardozo L. Rev. 221 (1996). But, more importantly, the Iowa legislature has concluded that a fact-driven nu-merosity analysis is more likely to advance the purposes of the Iowa Civil Rights Act rather than an arbitrary bright-line nu-merosity requirement that does not take into account differences in the employment practices and calendars of specific industries and employers. The Iowa legislature is free to choose a more tailored fact-bound test of regular employment rather than a blunt and somewhat arbitrary bright-line approach of federal law.
Fourth, when a court is urged to adopt a bright-line interpretation of a statutory provision, the question is usually not simply whether the bright line is workable or provides for certainty and predictability. Also of import, and sometimes of more importance, is where the proposed bright line has been located on the policy spectrum.
Here, Congress has elected to include some seasonal employers who employ the requisite number of employees for a relatively long period of time, but exclude employers who employ seasonal employees for a shorter period of time. Iowa has deliberately chosen a different substantive policy.
It is, of course, not surprising that the national political process, in which widely disparate federal actors have a voice, has produced a different policy than the more localized political process in Iowa. In any event, this case does not simply involve the dry methodological question of whether a bright-line approach to numerosity is better than a fact-based approach. It involves a fundamental policy question regarding the scope of coverage of employers who hire short-term seasonal workers. The majority opinion correctly hews to the policy choice embraced by the Iowa legislature and does not substitute a federal legislative choice made as a result of a materially different political process that produced a substantially different legislative result.
Wiggins, J., joins this special concurrence.