# IN THE COURT OF APPEALS OF IOWA

No. 15-0993
Filed October 12, 2016

**CREAM, L.L.C., d/b/a THE UNION BAR,**
    Plaintiff-Appellant,

**vs.**

**IOWA DEPARTMENT OF REVENUE,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Karen A. Romano, Judge.

Cream, L.L.C., d/b/a The Union Bar, has appealed from the district court decision affirming an administrative ruling that it owes back sales tax as computed by the Iowa Department of Revenue. **AFFIRMED.**

David L. Charles of Crowley Fleck, P.L.L.P., Des Moines, for appellant.

George W. Wittgraf of Wittgraf Law Firm, Cherokee, for appellant.

Thomas J. Miller, Attorney General, Donald D. Stanley Jr., Special Assistant Attorney General, and Adam Humes, Assistant Attorney General, for appellee.

Heard by Vogel, P.J., Mahan and Goodhue, S.J.*

*Senior judges assigned by order pursuant to Iowa Code section 602.9206 (2015).

**GOODHUE, Senior Judge.**

Cream, L.L.C., d/b/a The Union Bar (Cream), has appealed from the district court decision affirming an administrative ruling that it owes back sales tax as computed by the Iowa Department of Revenue (IDOR).

## I.  Background Facts and Proceedings

Jeff Maynes (Maynes) and George Wittgraf III (Wittgraf III), ages twenty-one and twenty-three years old respectively, and other members of Cream purchased a large bar in Iowa City operated under the name The Union Bar in August of 2004.  Maynes and Wittgraf III were in charge of the day-to-day operations of the bar.

A sales tax permit was obtained and returns were filed, but Maynes and Wittgraf III were inexperienced and apparently unfamiliar with general accounting methods and the records required by the IDOR to determine sales tax.  Maynes and Wittgraf III used available cash during the week to pay expenses.  Subsequently, entries were made on their records on the basis of their memories.  Whether entries were made to increase sales as well as expenses on the cash items is not clear.  When audited, Cream had no daily summary of deposits or cash register receipts.  They had no daily cash register tapes.  They put the cash at the end of each day in their safe and generally deposited the accumulated cash into their bank account at the end of each week.  Expenses were paid by check if not paid by cash, the receipts and expenses were transferred to QuickBooks, and a profit and loss statement was generated.  The sales-tax returns were computed from the profit and loss statement.

The IDOR initiated an audit when it noted the gross income reported on the 2006 income tax return was $115,000.00 more than reported on their sales tax return. In preparation of the audit, the IDOR sent an initial interview questionnaire, which was completed and signed by Cream's representative, George W. Wittgraf II (Wittgraf II). The assigned auditor visited Cream's place of business. Cream's owners, including the two managers of the bar, were all present when the questionnaire was delivered to the auditor. Information on the interview questionnaire and further information obtained from Cream's managers and agents became the basis for the audit. Included in the information was the sale price for beer and mixed drinks, the size of shots and mixed drinks, and the frequency of "specials." Specials involved reduced pricing, and the reduced pricing and the frequency of the specials was included on the questionnaire.

The IDOR agent examined the state and federal income tax returns, sales tax returns, profit and loss statements, general ledger, bank deposits, and purchase invoices provided by Cream. Because of the absence of cash register tapes or the records of original entry and any sales tax worksheets, the auditor concluded the information insufficient to determine the tax due and reliance on "external indices" was required. The auditor determined it would be appropriate to use the percentage markup method of external indices to establish Cream's sales, which is an accepted method of determining gross sales and has been used previously by the IDOR.

The percentage markup method takes the purchases made by the taxpayer from its suppliers, computes the average markup on the items purchased—making allowances for products not sold for various reasons—and

multiplies the average markup by the purchases made. The result obtained is divided by one plus the applicable sales tax rate, which assumedly was paid by the taxpayer, to arrive at the total sales of product. The auditor used the purchase invoices and the amounts Cream was charging its customers as a basis for its computation. The average markup for the calendar year 2008 was used, but the purchase price to which it was applied was computed on a quarterly basis for the three-year period covered by the audit. The markup ratio was applied by quarters due to the fluctuation in sales, depending upon whether the University of Iowa was in session. Because of the reduction in the purchases made, this method automatically took it into consideration the approximately $100,000 of income received on a business interruption policy that Cream received as a result of the closure of the business due to storm damage in 2006.

The audit also determined that Cream had not reported cover charges received by the bar, although such charges are subject to sales tax, and erroneously included local option taxes that resulted in a credit. The cover charge and local option tax issues were resolved by an agreement, and Cream paid $39,606.65 pursuant to the agreement. The claimed underpayment of sales tax paid on product remained unresolved.

The use of the percentage markup method resulted in Cream's sales being increased $835,587.97 over what it had reported during the three-year period under audit. The tax due was computed to be $57,616.41.

Cream objected to the use of the markup method of calculating gross sales. Cream specifically asserted it involved unwarranted assumptions and estimates, and was incorrectly applied. Cream also contended the method used

by the IDOR involved a sampling technique that is only permitted by agreement of the parties.

Cream filed a protest, which was denied administratively, and the matter was heard by an administrative law judge (ALJ). The ALJ filed a proposed order, affirming the audit. Cream appealed to the IDOR's director, but the director approved the proposed order. A petition for judicial review was filed in the district court, and once again the audit was affirmed. Cream has appealed.

## II. Preservation of Error

Error is preserved when an issue is raised and ruled on by the trial court. *Meier v. Senecaut,* 641 N.W.2d 532, 537 (Iowa 2002). The issues of whether it was appropriate to use the percentage markup method and whether it was correctly applied were raised and ruled on by the trial court. Error has been preserved on those issues.

## III. Standard of Review

Judicial review of district court decisions concerning an administrative agency's decision is for correction of errors at law. *Tremel v. Iowa Dep't of Revenue*, 785 N.W.2d 690, 692-93 (Iowa 2010). The appellate court's task is to determine whether if it would have reached the same result as the district court. *Gits Mfg. Co. v. Trailer*, 855 N.W.2d 195, 197 (Iowa 2014).

## IV. Discussion

### A. Insufficient Records

The initial controversy is a determination of what constitutes "insufficient records." Iowa Code section 423.41 (2013) states that "every retailer required or authorized to collect taxes imposed by this chapter and every person using in this

state tangible personal property, services, or the product of services shall keep records, receipts, invoices and other pertinent records as the director shall require." The director has determined the records required by a retailer must include "all bills, receipts, invoices, cash register tapes, or other documents of original entry" and "a daily record of the amount of all cash in time payments and credit sales." Iowa Admin. Code r. 701-11.4(1)(a).

Cream was unable to provide any cash register tapes or records of the daily receipts. Cream computed its receipts from its QuickBooks, which were dependent on the cash available whenever it chose to deposit its receipts. Admittedly, expenses were paid out of available cash and reported if and when remembered. Product was available to employees when on duty at no charge, and their consumption was not included in the sales tax report as required. *See* Iowa Admin. Code rr. 701-16.12, .13. Cream cannot seriously contend its method of determining sales complied with the IDOR rules. Instead, it apparently contends the quasi-direct method of accounting it used was more accurate in determining sales than the method used by the IDOR. We agree with the IDOR that Cream's records were insufficient to determine sales subject to the Iowa sales tax and did not comply with IDOR rules.

**B. Sampling and External Indices.**

Cream contends that the IDOR was not entitled to use the percentage markup method to compute the amount of sales subject to tax because the method involved, in part, a sampling technique and Cream did not agree to use such a method. Although Cream's brief covered other issues which are considered in this ruling, in its oral argument Cream relied almost exclusively on

its contention the IDOR used a sampling technique to determine Cream's tax without any agreement from Cream permitting it to do so, in violation of the statutory provisions.

Section 423.37(2) provides that

if a return when filed is incorrect or insufficient, the department shall determine the amount of tax due from information as the department may be able to obtain and, if necessary, may estimate the tax on the basis of external indices, such as number of employees of the person concerned, rentals paid by the person, stock on hand, or other factors.

The IDOR claims to have acted under this statutory provision. The cited language is followed by a second sentence in the same code section that provides, "The determination may be made using any generally recognized valid and reliable sampling technique . . . as mutually agreed upon by the department and the taxpayer." Iowa Code § 423.37(2). Cream contends that the IDOR used the sampling technique to determine the tax due without it agreeing to allow the IDOR to use a sampling method to determine sales. The IDOR asserts it did not use a sampling technique as contemplated by the statute and its interpretation is entitled to deference.

Cream correctly asserts there was no agreement to use a sampling technique. Cream contends the sampling method was involved in IDOR's method of determining sales, because after determining the percentage markup for the year 2008, the IDOR applied the percentage to each of the quarters under audit to calculate the tax due.

Implicit in Cream's argument is the assumption the IDOR's use of external indices is limited by the language authorizing the use of sampling absent an

agreement. Section 423.37 provides the IDOR "*shall* determine the amount of tax due" and "*may estimate* the tax on the basis of external indices," and also that "the determination *may* be made by using a generally recognized valid and reliable sampling technique . . . as mutually agreed upon between the department and taxpayer." (Emphasis added.) The two general methods of determining the tax due are both permissive. The use of a sampling technique is optional if the taxpayer and the IDOR can agree on an acceptable sampling technique. If there is no agreement, the IDOR is mandated to determine the tax due from the available information and may estimate the tax from external indices. In the absence of meaningful records, it is difficult to envision an estimate that does not depend on averaging or "sampling" at some point in the calculation.

Whether the percentage markup method used utilized aspects of what constitutes sampling is immaterial. Nothing in the statute prohibits the use of sampling when the term is used in its broad context, whether or not it is pursuant to an agreement. Absent complete records, if all methods of determining sales that included some measure of sampling were prohibited unless approved by agreement, it is difficult to see how the IDOR would be able to fulfill its mandated mission. The IDOR is not obligated to wait for an agreement with a taxpayer as to the method it would like to use in calculating the tax due. A statute is not to be interpreted in such a manner as to produce absurd results. *Bearinger v. Iowa Dep't of Transp.,* 844 N.W.2d 104, 108 (Iowa 2014).

We have concluded that even if deference was not granted to IDOR in its interpretation of the applicable statutes, its interpretation is correct. When

interpreting a statute, the statute is considered in its entirety, and we will not look beyond the language of the statute when it is unambiguous. *Bank of Am. v. Schultz,* 843 N.W.2d 876, 880 (Iowa 2014).

In any event, the use of the 2008 markup over the three year period was immaterial since the information provided by Cream indicated no change in the price of products sold to customers over the period from 2006 to 2010. The cost of goods sold was taken from Cream's records and did vary from quarter to quarter. To the extent the total sales of a particular product may have varied from one quarter to another or the size of the shots may have varied from one year to the next, Cream had no records substantiating a variance.

### C. Factual Dispute

In essence, Cream's argument is that the evidence does not support the findings of fact on which the audit was based or, alternatively, the sales markup method was not correctly computed. Findings of fact made by an agency are binding on the reviewing court if supported by substantial evidence. Iowa Code § 17A(19)(10)(f).

> Evidence is substantial when a reasonable person could accept it as adequate to reach the same findings. Conversely, evidence is not insubstantial merely because it would have supported contrary inferences. Nor is evidence insubstantial because of the possibility of drawing two inconsistent conclusions from it. The ultimate question is not whether the evidence supports a different finding but whether the evidence supports the findings actually made.

*City of Hampton v. Iowa Civil Rights Comm'n*, 554 N.W.2d 532, 536 (Iowa 1996) (quoting *Gaskey v. Iowa Dep't of Transp.*, 537 N.W.2d 695, 698 (Iowa 1995).

Cream has offered no other method of computing its sales except for the quasi-direct method that it used in the report it filed. Cream contends there is an

error in the adjustments the auditor made in determining gross sales. More specifically, it contends the amount estimated for spillage, theft, oversized shots, specials, and other losses was underestimated, and the consumption by the managers and employees was overestimated. It also claims that under standard procedure, the auditor should have visited the business while it was in operation and, presumably, interviewed Maynes and Wittgraf III at that time rather than rely on the questionnaire and the extensive statements made afterwards by Wittgraf II as their representative.

The auditor did view the premises, and all of the owners, including the two managers, were present when the initial questionnaire prepared by Wittgraf II was provided to the auditor. Wittgraf II, Wittgraf III, and Maynes all testified before the ALJ. Wittgraf II signed the original questionnaire. Cream had an opportunity to supplement its information, and Wittgraf II, as their agent, pointed out deficiencies that Cream continues to point out. Adjustments were made but apparently not enough to satisfy Cream.

Cream states that during the audit period, it borrowed money and was unable to reduce its preexisting indebtedness. Further, it claims there is no evidence that the managers or any of its owners enjoyed the receipt of excessive amounts of income during the audit period. Cream asked, "Where did all that extra money go?" This was not a comprehensive audit to determine net income but an audit to determine gross sales. It is clear that the inexperience of the managers resulted in very lax oversight.

Cream contends that the calculation of income made by the IDOR is not logical to the point of irrationality. Cream asserts it is unreasonable, arbitrary,

and capricious to find that it had unreported sales of $835,587.97 during the three-year period. The test is whether substantial evidence exists to support the IDOR'S conclusion, and once again, evidence is not insubstantial merely because it could support a contrary inference. *See City of Hampton*, 554 N.W.2d at 536. Nor can we say the conclusion is so illogical as to render it irrational, as required by section 17A.19(10)(i) or (n).

Does the assessment appear to be excessive and the adjustment made by the auditors inadequate? It may seem so. Nevertheless, Wittgraf II, Wittgraf III, and Maynes all testified before the ALJ, and they were unable to give any documentation or firm information that would support the adjustments the auditor had already made, let alone the requested adjustments for thefts, spoilage, oversized shots, reduction in income because of specials, drinks given away, or the amount consumed by themselves or employees. It developed that not all receipts were deposited in the bank account and transferred to QuickBooks. On occasion, the deposits would be in even amounts and at other times, all in one denomination of cash. The explanation was that some of the money was left in the safe and not deposited.

The burden is on the taxpayer challenging the assessment to prove the assessment is erroneous and not on the IDOR to prove its validity, as Cream seems to imply. Iowa Code § 421.60(6)(c); *Clark v. Iowa Dep't of Revenue*, 644 N.W.2d 310, 316 (Iowa 2002). Cream has woefully failed to meet the burden and only asserts the auditor made incorrect assumptions with no concrete evidence upon which the assumptions could be modified. Cream, not the IDOR, is responsible for the insufficiency of its records.

### D.  The ALJ's Failure to Allow a Late Filed Amendment.

Finally, Cream claims the district court erred in its failure to review the ALJ's dismissal of its request to amend its protest to include a request for attorney fees.  The district court did not address the issue in its decision, and no request for an enlargement of the court's rulings was made, as permitted by Iowa Rule of Civil Procedure 1.904.  Error has not been preserved.  *See Rosen v. Bd. of Med. Exam'rs*, 539 N.W.2d 345, 352 (Iowa 1995).

The decision of the administrative law judge and the district court are affirmed.

**AFFIRMED.**